Judge Ewing
delivered the Opinion of the Court.
John Whitney died some years ago, leaving several children, among whom was Samuel and Jeremiah. Administration of his estate was granted to Samuel; who, by agreement among all the heirs, made sale of the slaves, one of which was purchased by Jeremiah, at nine hundred dollars. A settlement was afterwards made by Samuel, with all the heirs, embracing as well the proceeds of the sale of the slaves, as the personal estate, and the amount to which each heir was entitled ascertained to be nine hundred and seventy six dollars forty eight cents. The notes which each heir had given for property purchased at the sale, were given up, and receipts taken, for the amounts purchased by, and advanced to, each heir. Jeremiah’s purchases and advancements amounted to thirteen hundred and fifty *328 seven dollars—for which he took his receipt, stating that it was fart of a legacy coming to him from his father’s estate.
The heirs, afterwards, agreed to make a division of the real estate, and, by a writing, executed the 29th of January, 1827, and signed by Jeremiah, as well as all the heirs, appointed one Hugh Brown to allot to the heirs, each, their respective parts.
At the date of the latter agreement, Jeremiah was in bad health, and on the 4th day of February next thereafter, by writing, constituted his son, John G. Whitney, to attend and act fox him in making said division.
The division was accordingly made, by Brown, and approved by J. G. Whitney, acting for his father, and by the rest of the heirs, and the approval and terms of division reduced to writing.
Jeremiah, afterwards, towards the last of February or first of March, died, having previously made his will, and appointed his son John G. and his widow his executor and executrix.
Samuel Whitney afterwards filed his bill, against the representatives and the heirs of Jeremiah—in which he made the heirs of John Whitney deceased, also parties —charging the payment of the excess to Jeremiah, and the execution of the receipt in the form it was, through mistake; and also, the foregoing facts in relation to the division, and that each heir had taken possession of his lot, &c. and prayed for the execution of deeds of partition, and the correction of said mistake, &c.
The heirs and executor and executrix of Jeremiah Whitney answered the bill controverting the excess of payment, and resisting the execution of partition deeds; and one of them only, in a separate answer, relied upon the statute of limitation.
The other heirs of John Whitney made no answer or resistance to the bill.
The Circuit Court granted relief to the complainant, on both grounds — except as to the heir who relied on the statute, and made no decree against him, as to his proportion of the sum over-paid. And the represen *329 tatives and heirs of Jeremiah have appealed to this Court.
One object of the bill was to have a mistake corrected,by which one distributee had obtained more than his share of the decedent’s estate; another, to have deeds of partition made according to the agreement which had been made by the heirs: as, for the first object, all parties proper for the second, were necessarily before the court, both objects were appropriately united in one bill; especially, as one of the defendant’s set up an alleged agreement, by which they were connected.
Objections to the joinder of different causes of complaint in chancery, should not be favored, & must be very glaring, to be a ground o f reversal, when no objection on that score, was made in the court below.
It is contended: first — that the matters in contest have been improperly joined in the same suit.
Second — that equity has no jurisdiction as to the sum overpaid.
Third — That there is error in the decree in both aspects of the case, on the merits.
First. The matters joined appertain to the same estate, and, so far as any controversy is involved, are between the same parties. Though the other heirs of John Whitney were brought before the Court as to one branch of the case, they were willing that deeds of partition should be made, according to the division, and made no defence to the suit. Though necessary parties, they were brought before the Court as incidental parties in the controversy with the heirs of Jeremiah Whitney, deceased, who alone resisted the settlement, and division of the real estate.
Besides, it is contended by John G., the executor and the agent of his father, in the division of the real estate, that the money overpaid, if any, was to be retained in making up his father’s part of the realty equal to the part of the other heirs. So that the matters involved in the controversy became intimately connected by the answer of John G. and might most appropriately have been considered together.
Again: no abjection is made, by plea, demurrer, or answer, in the Circuit Court to the misjoinder complained of. For the first time it is made in this Court. And it being an objection in form more than to the merits, should not be favorably regarded, and under similar circumstances, should, we think, never be indulged, except perhaps in very glaring cases.
The same strictnesss is not required in chancery as at law. In the former court, a multiplication of suits is peculiarly odious to the Chancellor, who can look into the whole case, apply the proof to the different issues joined, without danger of that confusion and embarrassment to which a jury might be exposed, by the examination *330 of unconnected, complicated matters in the same suit; and who delights to do full, final and complete justice at once, and to put to rest the contests of parties, with the least costs to either.
Debt & ditinue may be joined, and for a similar reason, a claim for a specific tract of land, and for a sum of money, the parties being the same, may be united in the same suit in chancery.
Equity relieves against mistakes, as well as frauds. An administrator having sold a slave to a distributee, and taken his note for the price, afterwards, gave up the note, & took a receipt for its amount with other advancements, as being a part of a legacy coming to him, from his father’s estate, when, in fact, it was much more than he was entitled to:—held, that there was an obvious mistake in some part of these transactions, which may be corrected in a court of equity.
Even at law, debt and detinue may be joined, because the one is for the recovery of a specific sum of money, the other a specific article of personal property. And we can perceive no great impropriety in indulging a complainant to join in the same bill, against the same parties virtually, a claim for a specific tract of land, or title for the same, with a claim for a specific sum of money, and especially when both claims originated out of, or, in the management of the same estate.
Second. Courts of chancery have ever exercised jurisdiction in the correction of mistakes, as well as in relieving against fraud. And we can come to no other conclusion, than that the complainant acted under a mistake or misapprehension of his rights, if not in overpaying the money, at least in. giving up the note, and in taking a receipt in the form it seems to have been worded. It cannot be believed that he intended the sum overpaid as a gratuity to Jeremiah. Yet, without pretending to have paid any thing, he has obtained the possession of his note for the negro man purchased, which was the complainant’s only evidence of claim against him, without the execution of any note for the surplus in his hands, or any other instrument than a receipt purporting to be an acknowledgement, that he had received the sum therein stated “ as a part of a legacy coming to him, from his father’s estate,” though the sum so received greatly exceeded the amount of the personal estate and slaves to which he was entitled. There must have been some mistake or misapprehension of his rights in this matter which a court of equity ought to look into and correct.
As to the merits, we perceive as little room to doubt. The amount of mistake is made out positively by one of the heirs who was present when a settlement among all the heirs took place, and specifies the precise sum to which each heir was entitled, which is substantially cor *331 roborated by another of the heirs, who cannot state the precise sum, but who states near the same amount, and which is also, circumstantially sustained by another witness, who proves that he (Jeremiah) acknowledged he was or would be indebted to the administrator— having received more than his part.
The statute of limitations,to be a bar, at law, or in chancery, must be relied on in some form. Ex’rs and adm’rs are not bound to plead it; nor is a guardian ad litem; nor will the ch’r require it to be pleaded in behalf of infants, when the claim against them appears to be meritorious. So held, upon this bill filed against the representatives of a man who, by some mistake, had got more of his father’s personal estate than he was entitled to—to have the mistake corrected and the overplus refunded—one of the heirs only having pleaded the limitation, he alone can be protectecf by it; and the decree for the amount of the claim,apportioned among the others, is approved.
Nor can we indulge in the application of the statute of limitation to other of the heirs than the one who pleaded or relied upon it. The statute is a strictly legal bar, and to be noticed at law or in chancery, must be relied on in some form.
An executor or administrator, as has been determined by this Court, is not bound to plead it, and would not be responsible, even to infant heirs, if he failed to do so, even where it would be a good bar.
We would also conclude, from analogy, that a guardian ad litem would not be bound to plead it.
It is sometimes regarded as an unconscientious defence. And infants, though under age, are not always in fact devoid of discretion, and may, as well as their guardian ad litem, have regarded it dishonorable to rely upon it. This Court cannot view the Chancellor, by reason of his guardianship over infants’ estates, (as contended by the counsel for the defendants,) as bound to set up for them, or compel them to rely upon, a defence which they have not made, and which they may have regarded as unconscientious and dishonorable to make. He may be bound to protect their rights and see that justice is done them, but is not bound to interpose a technical objection, which goes to defeat a meritorious demand which seems to be justly due: especially when they themselves have failed and refused to rely upon such objection. And a court of equity, possessing the power to apportion the responsibility among all who have not relied upon the statute, may, as we conceive, do so, as has been done in this case by the Circuit Court.
We have as little doubt as to the correctness of the decree respecting the real estate. The testimony is satisfactory that Jeremiah concurred with the other-heirs, in authorizing Brown to lay off the land, and *332 make the division between them, and that Brown did make it, and his plat and division is exhibited in the papers. It is also, satisfactorily shown that he authorized his son John G. to attend to and act for him in making the division; and that John G. did attend, and give his sanction in writing to the division made by Brown. That each of the heirs took possession of the part allotted to him, and some of them have sold to others. Jeremiah was in the possession of the part alotted to him at the time, remained in the possession and use of the same till his death, and his widow and heirs have remained in the occupancy and use of the same ever since.
Although there is some slight testimony tending to show that Jeremiah was not in his right mind when he executed the writing authorizing his son to superintend the division, and also, some tending, but in a very imperfect manner, to show that the lot assigned to Jeremiah was inferior in value to some of the lots assigned to other of the heirs — yet, this testimony is contradicted by other witnesses, and if it were not, is insufficient, as we conceive, to justify a chancellor, after so great a lapse of time, and undisturbed acquiescence on the part of the heirs, to disturb the repose of the family by overturning a division made by the selected agent of the parties, for their mutual benefit.
It is therefore the opinion of the Court, that the decree of the Circuit Court be affirmed.
The two years replevin laws were held to be unconstitutional when applied to pre-existing contracts: that decision is still approved; & sales, upon two years credit under the same laws, are deemed to be within the same principle. But a sale having been made under those laws, the creditors having submitted for eleven years, & having, in the meantime, taken out an execution upon the sale bond, and several writs of ven. ex. upon the return one of which, on their motion, was directed to a new sheriff; having also, quashed one sale, & filed a bill in chancery to enforce another: held that these acts amount to a waiver of the constitutional objection, and to an acceptance of the bond in lieu of the judgment: a motion to quash it, on that ground, now comes too late.
A party who, acquiescing in such a sale, neglects to enforce his bond till the obligors have lost their property, cannot quash the bond, and resort again to the original debtors—whose property has been already sold, leaving them to a hopeless recourse upon the purchasers.
A dep. sh’ff may, after the death or resignation of his principal, finish what he had commenced before, under an ex’on; but the court may direct a new process (ven. ex.) to another officer. The chancellor, his aid being unnecessary, has no jurisdiction of the case for that single purpose. But,
Where any incumbrance—either bona fide, or fraudulent, exists upon property upon which an execution has been levied, in consequence of which it would seem to be impracticable to sell the property at a fair price, a court of equity may take jurisdiction, upon bill filed, to remove the incumbrances-annul them, leaving the property subject to the ex’on, clear of adverse claims, or sell the estate, for the benefit of all interested. Vide post.
A bill defective in its details and specific prayer for relief, maybe aided by the answer, and, if the bill and answer together, show that the comp’t is entitled to relief, it may be granted, under the general prayer.
Mortgagor and mortgagee united in requesting that anex’on (against both of them,) should be levied on the mortgaged estate, adding a consent that it should be sold, if it would bring (what the law then required,) three fourths of its value. After the levy the mortgaged assigned the mortgage and debt secured by it, to a stranger, who obtained a foreclosure and sale of the estate—no effectual sale having been made under the ex’on, the bids not coming up to the valuation.
— Held,that this surrender of the land, for the purposes of the execution, was unconditional and irrevocable— the proviso relating to the sale only, and- amounted to. a waiver of all objections to the levy and sale, on account of the state of the title. The right and title-resulting from the agreement & levy Was superior to that of the assignee of the mortgage. — Nor could he be protected for want of notice, as the levy and return were matters of record. — His suit for a foreclosure, &c did not affect the plaintiff in the execution —who was no party to it.
A mortgagee having consented that an execution might be levied on the mortgaged estate—his interest not being subject to the levy; and that the estate might be sold for the debt, provided it will bring ¾ of its value, the levy made, and continued, but no sale till this bill was filed to remove incumbrances—held, that the condition on which the sale was consented to, must be observed ; a valuation of the land, at its present worth, must be made, & the sale proceed provided ¾ of the value is bid, &c.
The holder of the legal title is a necessary party to a bill to remove incumbrances.