## ROCKWELL and wife vs. MORGAN and others.

In proceedings for dower, if the defendant deny the complainant's right to dower the question must be tried at law.

But the court may inquire of what estate the husband died seized, and this involves an inquiry into the nature and character of the husband's right to the estate.

A bill setting up an equitable title to the land in the widow, and praying that if that claim shall fail that dower may be assigned, is not multifarious.

An objection to a bill on the ground of multifariousness, taken at the hearing, is not much favored.

Where the guardian of a female infant wrongfully converted the personal estate in his hands into lands, placing the title in a third person, who afterwards conveyed the same to the husband of the infant, upon the death of the husband the widow cannot claim an equitable title to such lands.

*Richey* and *Beasley*, for complainants.

*Vroom*, for defendants.

THE CHANCELLOR. The objection is raised *in limine* that the complainants' bill is bad for multifariousness. The precise objection raised by the answer is, that " by the practice of this court the complainant cannot, in a bill for dower and account, call in question or try the title of the defendant as heir at law or devisee, or pray any relief in that respect." Is the objection valid in either form ?

This court clearly cannot try or decide a question of legal title, nor decide whether a widow is legally entitled to dower when the legal right is denied. If the defendants deny the complainants' right to dower the question must be tried at law. *Curtis* v. *Curtis,* 2 *Brown's Ch. R.* 632; *D'Arcy* v. *Blake,* 2 *Sch. & Lef.* 390 ; 2 *Daniel's Ch. Pr.* 1343.

But the court not only may, but must of necessity inquire of what estate the husband died seized, and this

involves an inquiry into the nature and character of the husband's right to the estate. In *Curtis* v. *Curtis* there had been a decree directing that an account should be taken of the rents and profits of the freehold estate of Paul Downton Curtis. The court subsequently said, there seems to have been a slip in the former decree, and that the infant must now have an inquiry as to what estates Paul Downton Curtis died seized of. In this case there is no denial of the husband's legal seizin of the land in question. The bill states the fact, but alleges that the equitable title is in the wife; that the land was purchased by her guardian with her money; that he stood seized to her use, and that in breach of his duty as trustee he conveyed the land during her minority to her husband. She therefore claims to be entitled in equity to the land, and asks an account of all the rents and profits. But if that claim is not well founded, she then asks that she may have her dower in that land. These are certainly not distinct and independent claims. It presents the ordinary case of a bill filed with a double aspect. The bill found in Mr. Van Huytheysen's valuable collection of precedents, "Equity Draftsman" 175, claims not only dower but an annuity under the husband's will, and is filed against the executor as well as against heirs and devisees. The equitable claim must be disposed of before the title to dower can be settled. It must be disposed of in this court, and the only question would seem to be whether she was bound to file a separate bill to have the question litigated before filing her bill for dower. No demurrer was interposed. The evidence has been taken, and the rights of the parties fully investigated. No embarrassment has resulted from this course, and no possible advantage could result from dismissing the bill upon a mere technical objection at this stage of the cause. An objection to a bill on the ground of multifariousness frequently resolves itself into a question of expediency. On the one hand, the bill should be sufficiently extensive to

answer the purposes of complete justice, on the other hand, distinct and independent matters are not to be united in the same bill. The matters in this bill are not so distinct and independent as technically to constitute the vice of multifariousness. The objection at this late stage of a cause is not favored, even if technically a demurrer might have been sustained. *Hays* v. *Doane*, 3 *Stockt.* 84; *Whitney* v. *Whitney*, 5 *Dana* 327.

The strict rule is, that the objection must be raised by demurrer, and cannot be by the defendant at the hearing; though the court may *sua sponte* take the objection at the hearing. *Story's Eq. Pl.* § 271, *note* 5, and cases there cited.

The material question in the cause is, whether the complainant is entitled in equity to an account of all the profits of the real estate in the city of Trenton of which the husband died seized. The leading facts upon which the question depends are not controverted. The complainant, Mrs. Rockwell, while a minor, became entitled, under the provisions of her father's will, to personal property amounting to $5000. Her mother became her guardian, and placed or left the complainant's funds in the hands of her brother, Jefferson Blackwell, who was acting executor of the father's will. A sister of the complainant, who had attained her majority and was married to John A. Weart, was entitled to the like sum of $5000. On the 18th of January, 1830, the money of the complainant, by the assent and direction of the guardian, was vested jointly with that of Mrs. Weart, in the purchase of real estate in the city of Trenton, and a deed taken in the name of John A. Weart and Jefferson Blackwell. On the 10th of June, 1832, the complainant intermarried with Charles Morgan. On the 15th of April, 1834, the complainant still being a minor, Jefferson Blackwell, by deed of bargain and sale, conveyed the property to Charles Morgan, the complainant's husband, for the nominal consideration of one dollar.

The property in the hands of the guardian was personal estate. It was bequeathed as such to the complainant, and directed to be paid over by the executor as personal property. It was, without authority of law, converted into real estate, and the deed therefor taken in the name of the executor.

In the eye of the law it continued personal estate. The executor was bound to account for it as such. Upon the marriage, the husband was entitled to recover it and reduce it into his possession as personal property. That the husband chose to accept a deed for land, in which his wife's money had been invested by the guardian without authority of law, did not deprive him of his legal rights over the fund as the personal property of his wife. He had an unquestionable right to recover the money from the guardian as personalty, and to invest it the next moment in real estate in his own name. In effect that was precisely what he did. He accepted the land in lieu of the money. Neither the unauthorized conversion of the personal estate of the ward into realty, nor the acceptance of the land by the husband in lieu of the money to which he was entitled, can essentially alter the character of the transaction.

The argument in favor of the right of the complainant is, that the money of the ward having been used in the purchase of the real estate there was a resulting trust in favor of the minor, and equity would regard it as her land, though the title was taken in the name of another; that the personal estate of the ward having been converted into real estate, such conversion would be legal with the assent of the ward upon her attaining her majority, as she might then elect to take the land or the money; that after the marriage, the ward continuing a minor, the right of election devolved on the husband, and he was authorized to assent to the conversion; that by accepting the deed for the land he did in fact assent to the conversion and elect to take the money as real estate.

The reasoning, though plausible, is not sound. As against the purchaser, who used the minor's money in the purchase of the land, and took the title in his own name, equity would regard the *land* as belonging to the minor, but not as against the husband. The fact that the fund was thus invested in land could not interfere with the rights of the husband. He had a right to recover the money—to reduce it into possession as personal property. It may be questioned whether he was bound even to make an equitable provision for his wife out of the fund, for it might have been recovered at law without the aid of a court of equity. 2 *Story's Eq. Jur.* § 1403; 2 *Kent's Com.* 139.

Had the husband accepted from the guardian, in satisfaction of his claim, a *deed made to his wife,* his assent to the conversion and his election to take the property as land might fairly be implied. But no such assent or election can be implied from the fact that he accepted from the guardian or debtor of his wife a deed to himself in satisfaction of his claim.

There is no suggestion of any fraud or unfairness on the part of the husband. It was not only a lawful, but a natural and ordinary transaction. It is precisely what was done with the share of the sister of the complainant, which was invested in the purchase of an undivided moiety of the same land at the same time. The deed for the sister's share of the land, though purchased with her money, was made to her husband, and not to her. The title for the complainant's share was originally taken in her brother's name, and after her marriage transferred to her husband. And the two husbands continued for many years, and until the death of Weart, to stand seized of the land thus purchased, as tenants in common in their own names, without an intimation that the investment was unauthorized or inequitable. Both the complainant and her mother, who was her guardian, admit that they knew that the title was in the husband. The mother

says that it was wrong, though she raised no voice against it. The complainant says she yielded to it because her husband desired it. In fact, though it may now be felt to be a matter of regret, it is not perceived that either or both of them could have prevented it otherwise than by a settlement previous to marriage. I am of opinion that the husband rightfully took title to the land in his own name; that he took it as personal estate without any assent to the conversion of the personal into real estate; and that the wife has no equity which can be enforced as against the legal title of the husband. The complainant is entitled to her dower only in the estate.

Aside from the question of strict right, it is a consideration of some moment that this arrangement was not only acquiesced in by the complainant for twenty years during the life of the husband, but for five years after his death she continued to recognise her husband's title to the land as perfect, and to receive her thirds from its income as his widow. Though but little importance is ordinarily attached to the silence of a wife, so long an acquiescence in a transaction, both during coverture and afterwards, goes far to sanction a transaction which would otherwise have been of doubtful validity.

In regard to the real estate in the county of Middlesex, there is no question as to the complainant's right to dower. The complainant is entitled to dower in the whole real estate of her husband and to an account of the rents and profits.

The widow is entitled to dower in the clay banks as well as in any other part of the inheritance. Dower is assignable in mines, quarries, and in whatever is part of or appurtenant to the land of which a woman hath dower, and that whether it be assignable by metes and bounds or not. *Stoughton* v. *Leigh,* 1 *Taunt.* 402; 9 *Viner's Ab.* 212, *Dower D.; Park on Dower* 115.

The only question that can arise will be in regard to the mode of assignment, whether by metes and bounds or

2 K*

by a share of the profits. That course should be adopted which will be most favorable to the widow and which will most effectually secure the enjoyment of her right. There can be no difficulty in taking an account of the profits. It appears, from the answer, that the clay banks have been worked in connection with the farm, and the profits of the clay may be ascertained as well as of any other part of the property. Working the banks is a mere mode of enjoyment.

The complainant is entitled to dower and to an account of the rents and profits from the death of the husband.