# William Broomall, Exr., Plff. in Err., v. John McCallion.

## Same v. Ann McCallion.

Where one of several heirs in possession, taking advantage of the fact that he bears the same name as the ancestor who is the record owner, exchanges the land, by duly executed and recorded conveyances, for other land, to which he and the other heirs, after he has informed them of his act, remove, such knowledge, acquiescence, and removal will estop the other heirs from thereafter asserting any right to an interest in the land so relinquished.

But the other heirs are entitled to a proportionate interest in the land received.

Where there is a joint possession, the mere holding by one of the tenants is not an ouster of his cotenants.

Until ouster, the statute of limitations does not begin to run.

Interest in the question being tried does not legally disqualify a witness, otherwise competent, from testifying.

(Argued February 9, 1887.   Decided February 21, 1887.)

January Term, 1886, Nos. 130, 131, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, and GREEN, JJ.   Writs of error to the Common Pleas of Delaware County to review judgments on verdicts for the plaintiffs in actions of ejectment. Affirmed.

At the trials the following facts appeared:

Michael McCallion bought of John Larkin, Jr., in 1855, a lot of ground on Quarry or Walnut street, Chester, for $215. In 1859 he bought of Daniel B. Thompson an adjoining lot for $150.   Soon after his purchase he built a dwelling house on the ground, and resided in it with his wife and children, John, Michael, and Ann, until his death in 1870 or 1871.   Margaret, the fourth child, married Maurice Kearney, and moved to Connecticut with her husband, where she remained some years.

In 1873 Michael, the younger, exchanged the property on Walnut street with Jonathan Pennell, for four houses and a lot of ground on Potter street, Chester, some six squares off.   The consideration of the Walnut street property was $2,200, that of the Potter street property, $5,800.   To make up the differ-

ence, Michael, the younger, executed a mortgage to Anna Pennell, the wife of Jonathan Pennell, for $2,000, and a mortgage for $1,600, to a building association, making $3,600 the difference between the two properties.

Michael McCallion, the younger, being the only one then of the name, executed the deed for the Walnut street property, took the title for the Potter street property, executed the mortgages upon it for the boot money, personating his father, and passing off the Walnut street property as his own; the identity of names deceiving the purchaser and his conveyancer.

This exchange of properties was made without the knowledge of his coheirs; and when a few days afterwards he called upon them to give up the homestead and move to the new property, they complained to him of what he had done, and he replied that he did it for the best, and that it would be all right. John, Michael, and Ann took possession of the Potter street property, and have remained in possession mainly ever since.

In 1880 Michael, who had by that time built two more houses upon .the Potter street property, occupying the vacant ground between the original four houses and Seventh street, and, having moved into one of them with his brother John and his sister Ann, sold those two new houses to Maurice Kearney, the family, John, Michael, and Ann, still occupying one of them. The debts secured by the mortgages executed by Michael upon the Potter street property for the boot money, were never paid off.

After the death of Michael McCallion, Jr., John and Ann brought these separate actions against his executor and the tenants in possession of the Potter street houses, claiming to recover each a ¼ interest subject to the mortgages.

Under objection the testimony of Maurice Kearney was admitted in both suits; the testimony of Ann was admitted in the suit by John, and the testimony of John was admitted in the suit by Ann.

In the suit by Ann the court, CLAYTON, P. J., charged the jury substantially as follows, after stating the admitted facts:

It appears that Michael McCallion, Jr., undertook to make a deed of the property that had descended to him and his three coheirs jointly; and in that deed it is alleged that he assumed to be the entire owner, and in so doing perpetrated a fraud upon the purchaser by assuming to convey more than he really owned. If the case went no further than that, this plaintiff would have

no right to complain; for no fraud would be perpetrated upon her to her injury. The man had a right to sell one fourth; and if he sold the whole without her consent, it would be evident that she could not be injured, for the only person suffering by the fraud would be the purchaser. There could be no fraud upon the plaintiff, unless she accepted the sale and her brother refused to give her her share of the consideration.

In the evidence there appears some acquiescence upon her part, and acts upon the part of the coheirs, which seemed to ratify this sale; so much so as perhaps to estop her from ever denying that her brother Michael had a right to sell the lot. After he undertook to sell the whole estate (this woman and her coheirs being at that time in possession) the law would have protected their title. The duty of the purchaser was to go to the persons in possession of the land sold and inquire what title they had; the deed which Michael made could not affect the persons in possession in any way, except as to the ¼.

[But if, after he had made the deed, they chose to go out of possession, without giving notice of their title to the purchaser, and move into another house (being the property which had been the consideration for the sale), then I am inclined to think that they would be estopped from ever setting up a want of title in their brother; and after he informed them of what he had done, if they did any act that would amount to an estoppel in law; if they acquiesced in the sale and took possession of the property which had been the consideration for the exchange, then he would be bound to hold that property for himself and for them in the same interests as they held in the one he sold. In such a case the law makes him a trustee for himself and for them. If they went into possession jointly, and the others were not turned out by some act hostile to them, then the five years' limitation does not run; it has nothing to do with the case. When there is a joint possession it requires more than a mere holding by one to oust his joint tenant; something must have been done by Michael to warn his cotenants that he did not intend to carry out the trust. If all he did was to remain in possession, then I charge you that his possession was their possession, and that in such a case the statute of limitations cannot run.]   .  .  .

The first vital point in the case is, Has the plaintiff done any act by which she is estopped from setting up her title to

the property her brother sold? If you find that she has not, then I charge you that she is entitled to recover, because she has never parted with her title to the land her brother sold; and it would be unjust for you, simply because Michael, the younger, committed a fraud upon the purchaser, to hold that he has destroyed the right of his coheirs. She is no more bound by that act than you would be, if one of the counsel in this case were to make a deed of your farm to a stranger; but when the stranger came with his deed bearing your name upon it, which you did not put there, if you should submit to his title, go out and give the possession to him, then you might be so far estopped from setting up title against him, that you might have recourse against the man committing the fraud.

[The first point, therefore, is this: Has this woman done any act by which she is estopped from claiming her ¼ of the land derived from her father by virtue of the statutes of descent, and which her brother undertook to sell? If you find that she has not, you need go no further; if you find that she has (and giving up possession would be such an estoppel in law), then proceed to inquire whether there was any trust or confidence between her and her brother,] or knowledge conveyed to her by her brother, or from her to him; whether they had any understanding between them in regard to this matter; and if you find that there was, or that there was an agreement founded upon a money consideration, then this woman has no claim upon this land. Apply that to the evidence.

One of the witnesses says that her claim was for $550. It may be that this sum is a mere conclusion of his, as to the value of her interests; and yet it may be that she and the dead man agreed upon that amount as the consideration for the sale. We do not know. Michael is now dead; if he committed this fraud, she has no right to claim the benefit of it, merely because his mouth is shut; nor can any other persons interested with him speak for him. This testimony is the only piece of evidence I remember, as to the money consideration that was to be given this woman for the sale and for the fraud perpetrated upon her. If, in other words, when she discovered that Michael had assumed to sell the whole property, they agreed that a certain amount of money would compensate her for the land, then she has lost her claim upon the land; that is, if you find that the woman has brought this action for that money. One of the wit-

nesses has told you that she claims money; whether he calculated the value of what her share would be, or what was her claim, would be hard to say. He certainly did say that she was to have $550. It is for you to say what he meant. I am not going to construe the testimony. After dinner the man again took the stand and attempted to explain. If he has satisfied you, I have nothing more to say.

The next point in the case will be whether the agreement was made (at the time that Michael sold the land) that it was to be for the benefit of himself and his coheirs? If there was such an agreement, it ought to be in writing; if it was not in writing, then five years' possession would make the title good if held by him; but if he held for himself and his father's heirs, then they were all in possession at one time, and the statute could not run against such a trust. The sister, when her attention was called to it, said that he assured her that "all would be right, and that they should not suffer, that everything was all right." How he was going to make it all right we cannot tell. Whether he intended to hold it for their use, or whether he intended to pay them the full value for it, we do not know.

The first seems to me the most probable; he did not pay them for it, and he did hold the land allowing them to remain on it; but it is for you to say. Let me repeat, as this is very important: in the first place, he may have made an agreement with them; in the second place there may have been a trust created by the unlawful act or fraud of Michael; in either case if there was a general possession, then there has been no ouster of the joint heirs, and the statute does not run and the plaintiff may recover. Now I believe that is about all I can say to you. I will answer the points that have been submitted to me by the counsel. Keeping these points in the case before your minds you will agree upon your verdict.

Should you find for the plaintiff, I wish your verdict to be a conditional one, upon her filing or delivering to the persons now in possession of the title to the property that descended from her father, conveying all her interest in that property, and vesting it in the persons now holding the legal title, so that she shall be estopped if she recovers in this action from recovering again in another against the persons to whom her brother wrongfully sold the estate. Should you find for the plaintiff you need only say that she is entitled to $\frac{1}{4}$ of the property, conditional upon her giving a release of the deed made to Mr. Pennell.

The plaintiff submitted the following points:

1. Michael McCallion, the younger, having exchanged the property of his father's heirs, for the property in suit, in fraud of those heirs, he became thereby a trustee *ex maleficio* for the lands so exchanged, and the plaintiff could either claim ¼ of the property late of her father, or ¼ of the property for which the same was exchanged, at her election.

*Ans.* This point asks me to say, in effect, that Michael McCallion did make the deed in fraud of his brothers and sisters, and of the plaintiff. I have said to you that he made it in fraud of the purchaser, and that unless she recognized the sale in some way, and by which it would appear that she was bound by the sale, then it would apply to her. The fraud would then be upon her, unless she was compensated in some way, and there is no evidence that she has been. Virtually I affirm the point.

2. She cannot be called upon to abandon her claim to ¼ of the land late of her father, as long as the representatives of Michael McCallion object to her recovering ¼ of the land in suit.

*Ans.* This difficulty will be cured by the conditional verdict I have asked you to give, should you find it in her favor.

3. The most the court should require in that direction is that the verdict should be in her favor for ¼ of the land in suit, upon condition that she release her claim to ¼ of the land, late of her father.

*Ans.* That is virtually what I have said.

4. If the jury believe that Michael McCallion, the elder, died, seised of the lands on Quarry street, leaving four children, of whom the plaintiff is one, and that Michael McCallion, the younger, in fraud of the rights of the plaintiff, exchanged the lands late of the father for the lands on Potter street, now in suit, and that the plaintiff on being informed of the exchange gave up possession of the property late of her father to the person to whom her brother had sold, and entered into possession of the property on Potter street, now in suit, and that the said Michael McCallion, the younger, repeatedly and up to the time of his death, promised to make the matter right with his brothers and sisters; this is evidence to the jury that the plaintiff relinquished her ¼ interest in the property of her father, and accepted in lieu thereof ¼ of the property so exchanged for the property of her father.

*Ans.* It is evidence that may estop her from recovering ¼ of the estate of her father as against the purchaser from her brother.

5. The act of 1856, limiting the right of action, does not preclude the plaintiff from a recovery in this action.

*Ans.* It precludes her unless she has been in possession of the land she now claims under the trust, or unless she has been in possession jointly with the others; and if, as I have said, she has been in possession jointly with the others, or with her brothers, unless they have estopped her by some adverse notice, the statute of limitations does not run.

The defendant submitted the following points, *inter alia:*

1. If the jury believe that the property of Michael McCallion, Sr., was conveyed by Michael McCallion, Jr., to Jonathan Pennell, without the consent of the plaintiff, then her interest in the property of her father has never been devested and she cannot recover in this suit.

*Ans.* I affirm that point, unless, when she discovered that it was sold, she did some act to estop her from claiming against the purchaser.

3. If the jury believe that the said property was so conveyed with the consent of the plaintiff, and that it was not a loan by her to him, but that she was to acquire the same interest in the substituted property, then this was an express trust, and not being in writing it is contrary to the statute of frauds and perjuries, and she cannot recover in this action.

*Ans.* I do not think that there is any evidence of an express trust made at the time the deed was executed in the case. At least, I do not recollect any. If there was one, of course the only proof under the statute must be in writing.

4. Under the circumstances of this case there can be no recovery based upon a resulting trust or a constructive trust; and unless the plaintiff proves to the satisfaction of the jury an express trust in writing she cannot recover.

*Ans.* I decline to so charge you.

5. If the jury believe that the circumstances of the trade of property were known to the plaintiff more than five years prior to the commencement of the suit, and that she has not had possession of any part of the property in dispute, within five years prior to the commencement of this suit, she cannot recover.

*Ans.* This point I affirm, unless you find a joint possession,

and that one of the persons for whom the trust inured held the possession for all.

The charge and the answers to points in the suit by John were to the same effect.

The verdict of the jury in each case was that they found for the plaintiff the one undivided fourth part of the lands described in the writ, on condition that the plaintiff within fifteen days from date should execute and file in court for delivery to the person or persons holding the legal title a deed of release or confirmation for all the plaintiff's right, title, and interest in the Walnut street property. Judgment was entered on the verdict in favor of the plaintiffs and against defendants.

The assignments of error specified the admission of the testimony of Kearney and of John and Ann McCallion, the portions of the charge included in brackets, and the answers to the plaintiff's and defendant's points.

*William B. Broomall,* for plaintiff in error.—A resulting trust only exists by virtue of the payment of the purchase money, at the time when the title was acquired. Barnet v. Dougherty, 32 Pa. 371; Longdon v. Clouse, 1 Sad. Rep. 178.

It is essential to a resulting trust that the money should be paid at the time of the purchase. A subsequent payment cannot raise a trust. Bispham, Eq. p. 122.

In no way can this be considered a trust *ex maleficio,* for the reason above stated: that the exchange of properties must have been done with the consent of the plaintiff; otherwise, her title to the Walnut street property yet remains and there is, therefore, no trust at all in the Potter street property; and, as already stated, an acquiescence subsequent to the acquisition of title is essentially contrary to the nature of a resulting trust.

The plaintiff is barred by the act of April 29, 1856, § 6 (P. L. p. 532), because it does not appear that she was in possession of any part of the property in dispute within five years prior to the commencement of the suit.

There must be actual possession of a *cestui que trust* within five years before suit commences, in execution of the trust, to toll the statute. Best v. Campbell, 62 Pa. 476; Douglass v. Lucas, 63 Pa. 9; McNinch v. Trego, 73 Pa. 52; Clark v. Trindle, 52 Pa. 492; Williard v. Williard, 56 Pa. 126.

The action being against an executor, and the bent of the

plaintiff's case being to establish a trust, in which Ann McCallion is a cotenant, and Maurice J. Kearney, the husband of Margaret Kearney, is another cotenant, neither of these persons was a competent witness. Martin v. M'Cord, 5 Watts, 493, 30 Am. Dec. 342; Patterson v. Lanning, 10 Watts, 135, 36 Am. Dec. 154; Stoll v. Weidman, 3 W. N. C. 205; Diehl v. Emig, 65 Pa. 320; Karns v. Tanner, 66 Pa. 297; McFerren v. Mont Alto Iron Co. 76 Pa. 181; Gardner v. McLallen, 79 Pa. 398; Taylor v. Kelly, 80 Pa. 95; Standbridge v. Catanach, 83 Pa. 368; Arthurs v. King, 84 Pa. 525; Hess v. Gourley, 89 Pa. 195.

Moreover, the verdict was wrong in that it gives to the plaintiff ¼ part of a property worth $5,800 in exchange for ¼ of a property worth only $2,200.

A resulting trust could only be asserted to the extent of the amount of the purchase money which belonged to the plaintiff. Sheetz v. Marks, 2 Pearson (Pa.) 302; Wallace v. Duffield, 2 Serg. & R. 525, 7 Am. Dec. 660; Williard v. Williard, 56 Pa. 124.

*John M. Broomall,* for the defendants in error.—A tenant in common is a competent witness for his cotenant, in an action of ejectment brought by the latter. Bennett v. Hethington, 16 Serg. & R. 193; Ott v. Houghton, 30 Pa. 453; Gillespie v. Miller, 37 Pa. 250; Ferree v. Thompson, 52 Pa. 354.

This was a resulting trust. The purchase money was paid at the time the title was acquired. The purchase money was the homestead, and the conveyances were simultaneous. It makes no difference that the purchase was made with land instead of actual money, or that it was made without the knowledge of the defendant in error.

No statute of limitations could run against the plaintiff as long as the joint possession continues; neither the five years' term of the act of 1856, nor the longer term of the act of 1785.

PER CURIAM:

These two cases were argued together. The controlling questions are the same in each. Interest in the question being tried does not legally disqualify a witness, otherwise competent, from testifying. The points were correctly answered, and the evidence was fairly submitted to the jury.

Judgment in each case affirmed.