HENRY A. CLELAND ET AL. v. MARIE V. D. CASGRAIN AND JOSEPHINE BROWNSON.

| 92 | 139 |
|---|---|
| 110 | 30 |
| 92 | 139 |
| 119 | 403 |
| 92 | 139 |
| 134 | [2]484 |
| 92 | 139 |
| 136 | [3]670 |

*Equity—Pleading—Jurisdiction—Bill to quiet title—Multifariousness—Estoppel.*

1. The fact that the prayer of a bill in chancery asks for different kinds of specific relief in relation to the same subject-matter, against the same parties, and in favor of the same persons, does not make the bill multifarious.

2. How. Stat. § 6626, as amended by Act No. 260, Laws of 1887, which authorizes any person claiming the legal or equitable title to lands, whether in possession or not, to institute a suit in chancery against any other person, not in possession, set-

ting up a claim thereto in opposition to the title claimed by the complainant, to quiet such title, must be regarded as extending, rather than limiting or taking away, the jurisdiction of courts of equity; citing *Ormsby v. Barr*, 22 Mich. 80.

3. An objection that a bill filed to quiet title to lands fails to set up an assertion of hostile title by the defendant comes too late after answer and the taking of proofs, and especially after an answer setting up a hostile title.

4. A bill to quiet title set forth the sale and conveyance to the complainants by a surviving executrix, whose co-executor had resigned, of land belonging to the testator's estate, under a will authorizing the sale of lands for the payment of debts and of the incumbrances with which any of the lands might stand charged; that the sale was made after the payment of all of the debts, except two mortgages executed by the executrix and the heirs in place of those outstanding at the time of the testator's death, but upon other lands, which original mortgages were discharged prior to said sale; that the money so received on such sale was applied towards the payment of the substituted mortgages, which were discharged soon thereafter; that doubts had arisen respecting the power of the executrix to convey the land to the complainants, and that defendants, being two of said heirs, had refused to quitclaim any apparent interest they might have therein to complainants. Defendants answered, denying the validity of the sale. Upon the hearing it further appeared that subsequent to the sale, in consideration of the release by the widow (who had joined in the deed to complainants in her own right) of her interest in other lands, the heirs agreed to the allowance of her account as executrix, in which she accounted for the proceeds realized from said sale; that afterwards the lands so released, and which had been included in said mortgages, were partitioned among the heirs; and that defendants had disposed of the land so set off to them. And it is held that defendants are estopped from setting up any claim adverse to that of complainants, and that a case is presented for the cognizance of a court of chancery independently of 3 How. Stat. § 6626.

Appeal from Wayne. (Hosmer, J.) Argued April 14, 1892. Decided June 10, 1892.

Bill to quiet title. Defendants appeal. Affirmed. The facts are stated in the opinion.

*Keena & Lightner,* for complainants.

*Moore & Canfield*, for defendants.

McGRATH, J. In 1855, James A. Van Dyke died testate, seised of blocks 21, 24, 25, and 28 of Van Dyke's subdivision of the A. Beaubien farm, in the city of Detroit. He left a widow and several children, among whom were the present defendants and appellant. His will was duly probated, and administration had upon his estate. The will charged his personalty with the payment of debts and specific devises; gave to his widow, for her use during life, or so long as she remained a widow, all of his real estate; authorized his executors to sell such portions thereof as they might deem necessary for the payment of his debts; and, subject to such provisions, gave all the rest of his property of every description to his children and their heirs forever, to be equally divided among them.

The clause of the will empowering the executors to sell is as follows:

" And I give my said executors full power and authority to make sale of such portion of my real estate as they shall deem necessary, if any, for the payment of my debts, and the incumbrances with which any of it may stand charged."

Eben N. Willcox and the widow, Elizabeth D. Van Dyke, were appointed executors of the will, and they both qualified as such. Mr. Willcox had the practical management of the estate until 1871, when he resigned his trust. Mrs. Van Dyke survived as executrix, and her son, George W. Van Dyke, had the practical management of the affairs of the estate for her.

At the time of the death of James A. Van Dyke there were two mortgages upon his real estate,—one to Antoine Beaubien of $50,000, covering the A. Beaubien farm in Detroit, of which the land in question in this suit is a part; and one to Charles Moran, covering other property

in Wayne county. The commissioners on claims in the estate of James A. Van Dyke finally reported, and the debts shown by the commissioners were paid. The mortgage indebtedness was not included in the commissioners' report. In 1863 an application was made in the probate court by the executors for license to mortgage real estate. On the hearing the court entered an order finding that the debts were paid, excepting $25,000 on the Beaubien mortgage and $18,000 on the Moran security, and authorizing the executors to give another mortgage, bearing less interest, to Charles Moran, in place of the former one.

The Beaubien mortgage not being paid, it was foreclosed by William Daly, administrator of the estate of A. Beaubien, in 1868, and in January, 1869, a decree of sale was granted. Norman Boardman of New York purchased this mortgage and decree (an assignment of both being filed in the foreclosure suit), and took a bond from the Van Dyke executors, and what other security he could obtain. His business interests were attended to by Mr. Sidney D. Miller. In 1871 the Van Dyke executors and others interested in the estate applied to Mr. Boardman to transfer his security to the McMillan property, being productive realty belonging to James A. Van Dyke, so as to release the Beaubien farm, which was unproductive, for the purpose of relieving the estate from expense by a sale of part of the farm. This was finally consented to, and the change was made; the discharge of the old mortgage and the new mortgage being recorded the same day, May 5, 1871. This new mortgage on the McMillan property was signed, to avoid any question of authority, and for additional security, by those of the Van Dyke heirs who were of age, including Marie V. D. Casgrain and Josephine Brownson, both of the appellants herein, and the mortgage was witnessed by

Henry F. Brownson, husband of appellant Brownson. This Boardman mortgage continued to remain in that condition and unpaid until the year 1876.

The mortgage of Van Dyke to Charles Moran had a similar history. It was renewed in 1863, as shown above, and in 1871 it was transferred to other property of the estate for the same purpose as in the case of the Beaubien mortgage. The discharge of the Moran mortgage of 1863, and the giving of the new one, were made as a transfer of securities early in 1871. This last mortgage was signed by the executors as such, and by both Mrs. Casgrain and Mrs. Brownson, appellants herein, as well as by other heirs of James A. Van Dyke; Henry F. Brownson again signing as witness.

On September 25, 1875, complainants purchased the land in question (a part of the Beaubien farm) from the Van Dyke estate, receiving a warranty deed of the widow and surviving executrix, Elizabeth D. Van Dyke, for herself personally and as executrix, paying therefor $21,000, and taking possession under their deed. Immediately thereafter the Moran mortgage was discharged (October 10, 1875), and subsequently the Boardman mortgage in 1876. Part of the funds to pay the Boardman mortgage are traced to the receipts from the Cleland purchase.

At the time of Willcox's resignation as executor, in 1871, the estate was heavily burdened with debt, and the accounts of the executor were in a deplorable condition. Upon the release of the indebtedness upon the estate, in 1875 and 1876, by a sale of a part of the realty to complainants and others, the widow and heirs arranged for an amicable settlement of the estate. This, after much consideration, resulted in an agreement dated April 23, 1878. By the terms of this agreement the widow was to release her dower interest in the unproductive property, which she subsequently did, taking in lieu thereof the McMil-

lan rental, and the heirs were left free to partition.   As
part of the consideration for this release the heirs agreed—

" That the accounts filed or to be filed by her in the
probate court of said county of Wayne, showing the
management by her, the said party of the first
part, of the affairs of the said estate, to the
first day of April, A. D. 1878, shall be allowed
without opposition or dispute of any kind; and, further,
that no appeal from the allowance thereof shall be taken
by any of the said parties of the second part,—a sepa-
rate instrument of consent to such allowance to be duly
executed by the said parties."

The accounts referred to included all sales to date, and
the proceeds of the sale to complainants.  This agreement
was evidently intended to include all the realty belong-
ing to the Van Dyke estate.  Complainants' land was
not included in the list of property.  This agreement
of April 23, 1878, was carried out by partition proceed-
ings in the Wayne circuit court, rendered necessary by
the infancy of Catherine M. Moran, and by decree
therein the realty of the Van Dyke estate was set off in
seven parts to the heirs.  Complainants' purchase was
not included.  Subsequently appellants, Casgrain and
Brownson, have conveyed by warranty deed, at various
times, practically all of the property set off to them
respectively.

The power given by the will being for the purpose of
paying the debts of the deceased, and the records of the
probate court showing that the claims allowed by the
commissioners against the estate had been paid, and the
records of the register's office showing the discharge of
the mortgages outstanding at the time of the death of
James A. Van Dyke, the title of complainants to the
land purchased by them became questioned.  All of the
heirs except appellants and minors quitclaimed to complain-
ants.  Both of the appellants refused to quitclaim, and,

in order to remove the cloud upon complainants' title, the bill in this cause was filed, and set forth, among other things:

"That the said sale to your orators having taken place more than twenty years after the death of the said James A. Van Dyke, and the records of the probate court showing that the debts allowed as claims against said estate were paid prior to said sale, and it appearing by the records of the office of the register of deeds in and for said county of Wayne that the mortgages made by said James A. Van Dyke during his life-time had been discharged prior to the date of said sale to your orators, and the absence of any record in the said probate court or the said register's office showing the fact that the mortgage indebtedness incurred by the said James A. Van Dyke during his life-time continued unpaid at the time of the said sale to your orators, grave doubts and disputes have arisen respecting the power of the said executrix to make the sale as aforesaid to your orators, and it will be necessary to establish, preserve, and perpetuate the facts hereinbefore stated to perfect and complete the record of title of your orators to the premises aforesaid; that said facts are principally within the knowledge of the said Elizabeth D. Van Dyke, who is of the age of about seventy-four years, and such testimony may be lost by her death before the disability of said infants shall have been removed; that certain of the heirs, recognizing and admitting the justness and title of your orators in and to said premises, and the defects in the recorded evidence of such title, are ready and willing to renounce and quitclaim all right or apparent title they may have in said premises to your orators; but the said Marie V. D. Casgrain and Josephine Brownson decline to renounce or quitclaim the right or apparent title they may have in said premises to your orators, and, said infants being incapacitated from consenting, it is necessary to engage the aid and assistance of this honorable court to perpetuate such testimony, and remove the cloud upon the title of your orators on and to said premises."

The bill concludes with the following prayer:

"In consideration whereof your orators respectfully

pray that they may be at liberty to examine the said Elizabeth D. Van Dyke as a witness in this cause, and such other witnesses as may be found necessary, to the end that her testimony may be preserved and perpetuated; that it may be decreed that the said Elizabeth D. Van Dyke, as executrix of the estate of the said James A. Van Dyke, deceased, had full power and authority to sell and convey the said premises to your orators at the time and in the manner hereinbefore stated, and the defendants, Catherine M. Moran, George W. B. Van Dyke, Phillip C. Van Dyke, Henry B. Van Dyke, and William M. Van Dyke, Marie V. D. Casgrain, and Josephine Brownson renounce forever all interest in said land and premises, and that your orators' title may be free from the cloud said claim creates thereon. And for such other or further relief as may seem agreeable to equity."

And then follows the prayer for process.

The answer contains the following:

"They have no personal knowledge respecting the deed referred to as having been executed by the executrix therein named to the complainants, and neither admit nor deny the execution of such deed; but show that, as they are advised and believe, such deed, if executed to said complainants, was made without authority of law, and that the same was invalid as against the heirs of said estate, and especially as against these defendants, and that said deed conveyed no valid title to said complainants. They have no personal knowledge in regard to the payment of the consideration for said deed, or of the use which was made of the same by said executrix, and therefore leave complainants to their proofs in respect thereto. They deny that they consented to the use of said consideration by said executrix for the payment of said mortgages. They show that, as they are advised, said complainants have no legal or equitable right to establish or perpetuate the facts set forth in said bill, for the purpose of completing the record of their alleged title to the premises described. They say that they admit that they have declined to renounce or quitclaim their right to the premises described in said bill as heirs of said James A. Van Dyke, and that, as

they are informed and believe, the said complainants are not entitled to demand or receive such quitclaim, or any conveyance from them of the premises described in said bill.

"And, further answering, these defendants submit that the said complainants have not in their said bill made or stated such a case as doth or ought to entitle them to the relief prayed for, or for any relief whatever in a court of equity. And they ask to have the same benefit of this defense as if they had demurred to said bill; and that said bill may be dismissed, with costs to these defendants."

The case was heard upon pleadings and proofs, taken in open court, and the court decreed that the executrix had full power and authority to execute the deed to complainants; that defendants have no title or claim in said premises; and that the same are freed and cleared from all clouds which may have existed by any claim of defendants, or either of them.

From this decree defendants appeal.

1. The bill is not open to the objection of multifariousness. The fact that the prayer asks for different kinds of specific relief in relation to the same subject-matter, against the same parties, and in favor of the same persons, does not make the bill multifarious. It has been held that a prayer for general relief will support a decree for specific relief, although complainant may not be entitled to the relief prayed (*Wilkin v. Wilkin*, 1 Johns. Ch. 111; *Colton v. Ross*, 2 Paige, 396); that a bill may be framed with a double aspect (*Colton v. Ross, supra*; *Varick. v. Smith*, 5 Paige, 137); that two good causes of action even, arising out of the same transaction, in which all of the defendants are interested in the same claim of right, may be joined (*Varick v. Smith, supra*); that when the object of the bill is single, in the sense that it is to establish and obtain relief from one claim in which all the defendants are interested, it is not

multifarious (Puter. Ch. Pl. & Pr. Mich. 2d. ed. 23; *Ingersoll v. Kirby*, Walk. Ch. 65); that when a bill is filed with a twofold object, either for a specific delivery of property or an enforcement of a supposed lien, it is not multifarious (*Murphy v. Clark*, 1 Smedes & M. 221; *Baines v. McGee*, Id. 208; *Whitney v. Whitney*, 5 Dana, 327).

*Hart v. McKeen*, Walk. Ch. 417, lays down the same rule, but holds that it is inapplicable to that case. The Court there says, quoting from Chancellor WALWORTH:

"A proper case for a bill with a double aspect is where the complainant is in doubt whether he is entitled to one kind of relief or another, upon the facts of his case as stated in the bill. In such a case he may frame his prayer in the alternative, so that, if the court is against him as to one kind of relief prayed for, he may still be entitled to obtain any other relief to which he is entitled under the other part of the alternative prayer."

While the court may refuse to grant the specific relief prayed for, and under the prayer for general relief may grant another kind of relief, it cannot be said that if the relief granted, but not asked, had been prayed, the bill would have been subject to objection for multifariousness. The prayer for general relief is usually in the disjunctive, and each separate prayer should be so framed. Defendants, however, did not demur to the bill, but simply reserved the privilege, by answer, of making the objection at the hearing. In such case the court of its own accord, and not the defendant, is to take the objection; but the court should not when it would be merely technical, and when the object for which the parties have incurred the expense, and for which the court has been put to the trouble of hearing and examination, can be substantially accomplished by the record as it stands. *Payne v. Avery*, 21 Mich. 524; *Chew v. Bank*, 14 Md.

299; *Oliver v. Piatt*, 3 How. 333; *State v. Ellis*, 10 Ohio, 456.

2. It is contended that the bill is bad because it fails to set up an assertion of hostile title by defendants. How. Stat. § 6626, must be regarded as extending the jurisdiction of courts of equity, rather than limiting that jurisdiction or taking it away. *Ormsby v. Barr*, 22 Mich. 80. The bill presents a case for the cognizance of a court of chancery independently of the statute. As early as the case of *Rowland v. Doty*, Har. Ch. 3, it was said by Chancellor FARNSWORTH that—

"The jurisdiction of a court of equity (exclusive of any statutory provision upon the subject) to set aside deeds and other legal instruments which are a cloud upon the title to real estate, and to order them to be delivered up to be canceled, is fully established."

In *Salisbury v. Miller*, 14 Mich. 160, where the bill alleged that by the mistake of a conveyancer the land was misdescribed in both contract and deed, the Court held that the bill was not one to quiet the title under the statute. The Court say:

"Defendant assumes that this is a bill filed under the statute to quiet title, and that, therefore, a complete and indefeasible legal or equitable title must be made out as against all the world. But this is not, we think, the fair construction to be placed upon the bill. It is based upon relations of privity, and not on a title assailed adversely. The case made is, in brief, that complainant purchased the premises in question, and paid for them, and went into possession and improved them; that Joslin undertook to convey in pursuance of the original contract, but that by mistake the contract and deed both contained a false description; that defendant bought the remainder of the same government subdivision, knowing complainant's rights, and being expressly informed of them by Joslin himself, before purchasing; and that a mistake also occurred in deeding to defendant the entire subdivision, without reserving complainant's premises. It is then the simple case of a person entitled

to land, which by mistake has not been conveyed to him, asking protection against one who has taken title from the same vendor, with notice of his equities. * * * The refusal on the defendant's part to release, rendered this suit necessary."

In *Haddon v. Hemingway*, 39 Mich. 615, the Court say:

" The execution sale, valid or invalid, would have been a cloud on the title, had there been no statute enlarging the remedy against claimants out of possession."

In *Waterman v. Seeley*, 28 Mich. 77, the bill was filed to perfect the title to certain lands bid off by complainant upon a mortgage sale. The legal title was not and never had been in the mortgagor. The Court say:

· "It is apparent that complainant's case is based on the claim that he is entitled to relief against all these parties, on the ground that he has a complete equity, and that they have set up claims that are subordinate to it, and in fraud of it. If his theory is correct, the case is one of original equity cognizance, and not in any way derived from the statute for quieting titles in favor of parties in possession. The fact that he is out of possession is not important." 3 Pom. Eq. Jur. § 1399; *King v. Carpenter*, 37 Mich. 363; *Eaton v. Trowbridge*, 38 Id. 454.

But, independently of this consideration, the contention comes too late after answer and proofs taken, and especially after an answer setting up a hostile title.

In *Jenks v. Hathaway*, 48 Mich. 538, on demurrer the bill was dismissed, because of the indefiniteness of the allegation respecting defendant's claim. The Court held that the claim against which relief is sought must be something which is calculated to cloud the title, and that the bill must set forth the nature of the claim, or in what way the title is wrongfully clouded. The question there was not whether defendant had "set up" or "asserted" a claim, but rather what was the nature of the claim which he did assert. But in *Woodworth v. Gorton*, 46 Mich. 324, defendant answered, making no

admission of complainant's rights, and denying that he had given out that he had any interest, but not disclaiming any interest in fact. The proofs showed that he had undertaken to sell the land under a levy against complainant's husband, which was not made under a valid writ, and that the certificate of sale had been filed with the register of deeds. It also appeared that he had refused to release the claim. Although the defendant's claim, as set out in the bill, was indefinite, the court granted the relief prayed.

*Stockton v. Williams*, 1 Doug. 547, was a suit to enjoin an action at law in ejectment, and to quiet title. Complainants had a perfect remedy by defense at law. But defendant in the chancery suit having answered, the question of jurisdiction could not be raised at the hearing on the merits. "Such a course would be oppressive after a protracted litigation involving the complainants in great expense." *Bennett v. Nichols*, 12 Mich. 22; *Flanders v. Chamberlain,* 24 Id. 305.

3. It is not necessary to consider severally the other objections raised. They are: That the executrix had no authority to make the sale in question; that the original indebtedness was paid and discharged, and that the indebtedness which existed at the time of the sale was that of the executors, or of the executors and heirs, and was not the indebtedness of the testator; that with the satisfaction of the debts of the testator the power of sale had lapsed; that the power given by the will was a power to the persons named as executors, to be exercised by them jointly, and that the deed executed by the executrix conveys the personal estate of the widow only·

The deed to complainants was executed in 1875, and purported to be between Elizabeth D. Van Dyke, "for herself and as executrix of the estate of James A. Van Dyke," and complainants. No question is raised but that

the price paid was adequate. The proceeds of the sale were applied to the liquidation of mortgages in which defendants had joined, and the mortgages were discharged. The executrix accounted to the probate court for the proceeds of the sale to complainants. The defendants and the other heirs, in April, 1878, entered into an agreement with the executrix whereby she released to them a large portion of the property which had been covered by these mortgages (intending to release all of the unimproved property belonging to said estate, but the property sold to complainants was unimproved, and was not included), in consideration of which they agreed—

"That the said party of the first part shall have and receive the full sum of three thousand dollars ($3,000) per annum in the manner above specified; that the accounts filed or to be filed by her in the probate court of said county of Wayne, showing the management by her, the said party of the first part, of the affairs of the said estate, to the 1st day of April, A. D. 1878, shall be allowed without opposition or dispute of any kind; and, further, that no appeal from the allowance thereof shall be taken by any of the said parties of the second part, —a separate instrument of consent to such allowance to be duly executed by the said parties."

In May, 1878, defendants, Casgrain and Brownson, and others, filed a bill for a partition of a large amount of real property belonging to the estate, intending to include all the unproductive property of the estate, including a large number of parcels which had been covered by the mortgages aforesaid. The property conveyed to complainants was unimproved, and was not included. A partition was had, whereby certain of the property which had been covered by said mortgages was assigned to the defendants, and it appears that the parcels so assigned to defendants have been by them sold and conveyed away. The defendants have acquiesced in the sale to complainants, have received the benefits of that sale, and

are estopped from setting up any claim to this property, adverse to the claim under the deed to complainants.

As was said in *Moran v. Palmer*, 13 Mich. 367:

"It is a well settled principle of equity that if a man, having a title to an estate which is offered for sale, knowingly allows another to sell it to a purchaser, who supposes the title to be good, without at the time asserting his title, he shall be bound by the sale, and neither he nor his privies shall be allowed to dispute its validity. *Wendell v. Van Rensselaer*, 1 Johns. Ch. 354; *Storrs v. Barker*, 6 Id. 166; *Tilton v Nelson*, 27 Barb. 595; *Cochran v. Harrow*, 22 Ill. 345; *Byran v. Ramirez*, 8 Cal. 461; *Cicotte v. Gagnier*, 2 Mich. 386; Story Eq. Jur. § 385. Especially should this be the rule of equity when the silent party has himself received the benefit of the sale, and where, therefore, he can suffer no detriment from its application, but is only restrained from appropriating to his own use a second time that for which he has once been paid." *Thompson v. Simpson*, 128 N. Y. 270 (28 N. E. Rep. 627); *Herques v. Marti*, 85 Id. 609; *Broomall v. McCallion* (Penn.), 8 Atl. Rep. 413; *Goodman v. Winter*, 64 Ala. 410.

The decree is affirmed, with costs to complainants.

The other Justices concurred.