## NISBETT v. MILNER.

1. REFORMATION OF INSTRUMENTS — EQUITY—MISTAKE—CLOUD ON TITLE—TAXATION.

   On a bill to redeem from tax deeds held by a defendant to whom the land owned by complainants had been conveyed through a mistake of a prior grantor in complainant's chain of title, the equitable right to reform the deed is enforceable in favor of the complainants who made no claim through the erroneous instrument, but obtained title through a mortgage foreclosure and mesne conveyances from the grantor who committed the error.

2. SAME—JURISDICTION OF EQUITY.

   Equity having acquired jurisdiction on one ground will retain it for the purpose of giving such relief as will dispose of the controversy.

3. SAME—DEFENSES.

   Reformation is not barred by the defense that the complainants are not in a position to rectify the error by conveying the land which the deed should have conveyed, where the mistake had been in effect corrected, by a subsequent conveyance to the grantee in such deed, of the property which the parties intended to convey.

4. SAME—REMOVAL OF CLOUD—BILL TO QUIET TITLE.

   While a complainant in a bill to remove a cloud from the title of occupied lands must show that he is in possession or the

defendant is not, such want of possession does not preclude relief in a case coming under another recognized rule of equity jurisdiction.

5. SAME.

The jurisdiction of equity, exclusive of any statutory provisions on the subject, to set aside deeds and other legal instruments which are a cloud upon the title to real estate and to order them to be delivered up, is fully established.

Appeal 'from Mecosta; Perkins, J., presiding. Submitted November 10, 1909. (Docket No. 139.) Decided December 30, 1909.

Bill by William P. Nisbett and another against George W. Milner and others to redeem from a sale of land for taxes, and to quiet title. From a decree for defendants, complainants appeal. Reversed, and decree entered for complainants.

*Cogger & Broomfield,* for complainants.

*Smedley, Hall & Freeland,* for defendants.

The bill of complaint in this cause was filed to establish and enforce the right of complainants to redeem, from a certain tax deed, dated September 5, 1901, given by the auditor general, to defendant George W. Milner. The property directly involved is a strip of land 20 feet north and south, and 100 feet east and west, out of the southeast corner of lot 14, block 20, of the original plat of the city of Big Rapids. This land, together with other lands, was purchased by complainants of M. Servetus Dart by warranty deed, dated October 30, 1900, for $20,100. The bill likewise (in effect) prays for the removal of certain clouds upon the title to said strip, occasioned by—

(1) The recording of a deed on February 13, 1896, dated December 22, 1891, from Daniel F. Comstock and wife to Chester W. Comstock and wife.

(2) The recording of a mortgage dated and recorded December 21, 1896, from Chester W. Comstock and wife to George Young.

(3) The recording of a quitclaim deed December 31, 1902, dated March 11, 1901, from Chester W. Comstock and wife to George W. Milner and wife.

These instruments all include other property than the land in suit, and, for the purpose of removing the cloud which they constitute upon complainants' title, they ask that they be reformed or set aside, so far as they purport to convey any interest in the strip in question.

The foregoing diagram will assist to a better understanding of the matter in dispute.

By this diagram, it appears that blocks 20, 21, and 22 lie close together, running from west to east, and separated only by the north and south streets. It also appears as to blocks 20 and 22 that they were similarly platted; that the northeasterly portion of each block was divided into four lots, viz., 13, 14, 15, 16; that each of these lots in block 20 was of the same area and in the same position as the corresponding number in block 22; that there was carved out of the southeasterly corner of lot 14 of each block a strip 20 by 100 feet, said strips being identical as to area and position on each lot 14.

Prior to December 22, 1891, Daniel F. Comstock was the owner in fee simple of lots 13, 14, 15, and 16 in block 20, and lots 13, 14, 15, and 16 in block 22. He also owned lots 1, 2, and the north half of 3 in block 20. At that time, Daniel Comstock had commenced the construction of a building, covering lots 1, 2, and the north half of 3, and the west 50 feet of lots 14, 15, 16, and part of 13, all in block 20. At the same time, he had commenced to build a shed 35 by 75 feet, on the southeast corner of lot 14, block 20. This shed covers the easterly 75 feet of the strip in dispute, but is 15 feet wider than the strip, and therefore covers an additional portion of said lot 14, lying immediately north of said strip. At this time, Daniel F. Comstock lived in his home, located on parts of lots 14, 15, and 16, block 22, and Chester Comstock, his son, lived in a house located on parts of lots 13 and 14, block 22. (See plat.)

This being the situation, on December 21, 1891, Daniel F. Comstock executed a deed to Chester Comstock and wife, containing the following description:

" A strip of land, 100 feet long and 50 feet wide, off east end of lot 13, block 22, and a strip 20 feet wide and 100 feet deep, off lot 14, or the southeast corner of said lot 14, *block 20*."

On the same day, Daniel executed a deed to his wife, Dolly, containing the following description:

" Lots 13, 14, 15 and 16, block 22, except lands deeded to Chester W. Comstock, which is part of lots 13 and 14."

On July 12, 1899, Dolly Comstock executed a deed to Chester W. Comstock and wife, containing the following description:

"Also (a piece of land) 100 feet long east and west, by 20 feet north and south, out of the southeast corner of lot 14, block 22."

On December 21, 1896, Chester W. Comstock and wife gave a mortgage, covering the strip in question and other lands, to George Young, his father-in-law, which mortgage was assigned to defendant George W. Milner March 1, 1901. On March 11, 1901, Chester W. Comstock and wife executed to defendants George W. Milner and Jennie M. Milner, his wife, a quitclaim deed covering the disputed strip.

Such of the foregoing instruments as relate to the 20-foot strip, on lot 14, block 20, together with the tax deed, from which complainants seek to redeem, constitute defendants' paper title to the strip in dispute.

Complainants' title thereto is based upon the following instruments:

(1) A mortgage from Daniel F. Comstock and wife to the Michigan Trust Company and Michael Brown, dated October 31, 1896, covering *all* of lots 13, 14, 15, and 16, block *20*, also other lands.

(2) The assignment of said mortgage by the mortgagees to the Michigan Trust Company, as receiver for

the Mecosta County Savings Bank, dated November 21, 1896.

(3) The commissioner's deed on the foreclosure of said mortgage, dated December 21, 1898.

(4) Deed from Michigan Trust Company to M. Servetus Dart and wife, by order of the court, dated October 29, 1900.

(5) Deed from M. Servetus Dart and wife to complainants, dated October 30, 1900.

The record discloses the following facts: That defendant George W. Milner is the son-in-law of Daniel F. Comstock. That Jennie M. Milner is the daughter of Daniel and sister of Chester. That both said defendants lived for a time with Daniel after the failure of the Mecosta County Savings Bank. That defendant Milner knew there was something wrong about the description in the deed from Daniel to his son Chester, dated December 21, 1891. That he knew of the giving of the mortgage by Daniel to the Michigan Trust Company, knew of its foreclosure, and of the deeds to Dart and from Dart to complainants, and he knew these various instruments covered the strip in dispute. It is, in effect, conceded of record that a mistake was made in the description in the deed from Daniel to his son Chester, and that it was Daniel's intention to convey the 20-foot strip of lot 14, block 22, instead of the corresponding strip of lot 14, block 20. Since the purchase of the property by complainants, there has been a joint possession by them and defendants of the shed, located in part upon the disputed strip, and the taxes thereon have been paid by defendant. Complainants have sought to secure from defendants a quitclaim deed, and have offered to redeem from the tax deed, and repay the taxes. This being refused, they have filed their bill of complaint. From a decree dismissing the bill, complainants appeal.

BROOKE, J. (*after stating the facts*). In the foregoing statement of facts, we have said that it is, in effect, conceded of record that a mistake was made in the deed

from Daniel to Chester. If it should be urged by counsel for defendants that the admissions of counsel do not amount to such concession, we have no hesitation in holding that there was a mistake in said deed. It is unnecessary to state at length the reasons which impel to this conclusion. A study of the instruments themselves, and a knowledge of the location of the house Daniel was deeding to Chester, will afford an absolute demonstration of fact.

. It is urged on behalf of defendant that complainants cannot maintain this suit to reform a deed, because they do not claim under the deed sought to be reformed. Complainants take the position that their bill is filed primarily to secure to them the right of redemption, and, incidentally, to remove certain clouds upon their title, and that equity having acquired jurisdiction upon one ground will retain it for the purpose of giving such relief as will dispose of the controversy, and in this view we agree. See *George* v. *Light Co.*, 105 . Mich. 1 (62 N. W. 985), and cases there cited; *Hall* v. *Nester*, 122 Mich. 141 (80 N. W. 982).

It is clear from the record that when Daniel F. Comstock executed the mortgage to the Michigan Trust Company, in which was included this strip in dispute, he believed he was the owner thereof, and that in his deed to Chester he had conveyed title to the corresponding strip on lot 14, block 22.

It is equally clear that as between himself and Chester he had a right to file a bill to reform the deed to Chester, or to have it declared inoperative as to the strip in dispute. We have no hesitation in holding that this equitable right passed to the mortgagee, and from the mortgagee, through mesne conveyances, to the complainants. It may be said that such relief could not be granted to Daniel's suit, unless he had given to Chester the land intended, and it is urged that these complainants are not entitled to the relief because it is not in their power to convey to Chester's successors in title (the defendants) the corresponding strip on lot 14,

block 22. The answer to this claim is that Chester got title to the last-named strip by deed from his mother, dated July 12, 1899, she having taken title thereto, on the same day Chester got his deed. It is apparent, therefore, that the mistake was rectified, so far as it could injuriously affect Chester, but it was not rectified by Chester redeeding to his father the strip erroneously included in the deed to him. Had he done so, such title as he possessed would of course have immediately vested in the mortgagee.

It is argued by defendants' counsel that complainants were not in possession of the strip, and that defendants were in possession; therefore, that complainants could not file a bill to remove a cloud upon the title—citing section 448, 1 Comp. Laws. We think the record shows a joint possession of the land in question, and, in any case, a party having an equitable cause of action, coming within any recognized rule of equity jurisprudence, may enforce the same in equity, whether in or out of possession. *Rowland* v. *Doty*, Har. Ch. (Mich.) 3; *Jones* v. *Smith*, 22 Mich. 360; *Waterman* v. *Seeley*, 28 Mich. 77; *King* v. *Carpenter*, 37 Mich. 363; *Eaton* v. *Trowbridge*, 38 Mich. 454; *Cleland* v. *Casgrain*, 92 Mich. 149 (52 N. W. 460).

In *Rowland* v. *Doty, supra*, the court said:

"The jurisdiction of this court (exclusive of any statutory provision on the subject) to set aside deeds and other legal instruments, which are a cloud upon the title to real estate, and to order them to be delivered up to be canceled, is fully established."

It is claimed, and the learned circuit judge held, that:

"Defendants George Milner and Jennie M. Milner were in actual and undisputed possession of the lands purchased at said tax sale for a period of more than five years from September 5, 1901, the date of the auditor general's deed, and before the commencement of this suit, and, by reason thereof, the said sale became absolute."

This we think was erroneous. The record shows that

defendant did not go into possession under the tax deed, but was in possession before he obtained his deed.   That such possession as he had was joint with that of complainants, and that, although he had actual notice of complainants' claim to the land, he served no notice to redeem upon them though he did serve such notices upon Chester W. Comstock and George Young, whose title he had then already acquired.   Under these circumstances, his possession is no protection.

The decree is reversed, and a decree will be entered in this court, permitting complainants, upon repayment to defendants of taxes paid by them, together with interest thereon, to redeem from said tax deed, and setting aside and holding for naught the three instruments first described herein, so far as they relate to the lands in dispute.

BLAIR, C. J., and MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.