## John Fisher v. Hopestill Fobes.

*Statute abolishing resulting trusts construed.* The statute of this state (*Comp. L.*, §§ *2637–8*) abolishing resulting trusts, where one person furnishes the consideration for a grant to another, and vesting the title in the person named as alienee in such conveyance, subject only to a trust in favor of creditors, when the effect would otherwise be to defraud them, applies only to cases where the conveyance was so made by consent of the person furnishing the consideration, and not to a case where the person taking the conveyance in his own name has done so, either in fraud of the rights of the person paying the consideration, or, though no fraud was intended, without his consent.

*Constructive fraud.* Where B, in procuring such conveyance, was acting as agent for A, who furnished the consideration, without any understanding as to who was to be named as grantee in the conveyance, but with a distinct understanding that the conveyance was to be for the benefit of A, it was the plain duty of B to have had the conveyance made either directly to A, or to have had a trust in favor of A distinctly declared in the conveyance; and failing in this he would be chargeable with constructive fraud.

*Limitation of an assent.* Where A was informed that the transaction, out of which

FISHER *v.* FOBES.

such conveyance arose had been arranged, and it does not appear that he knew to whom the deed was to be made, and he expressed his satisfaction, this assent would not extend to the conveyance to B as afterwards made.

*Silence, when not a waiver.* And although the deed, after its execution, was shown to A and read by him, and he expressed no objection, his silence, provided he had not previously assented that B should receive the title without any provision for his own security, would not operate as a waiver of his rights.

*Silence, when not evidence of previous assent.* Such silence alone, where A had been allowed to take possession of the property and to appropriate the profits without account, is not such evidence of previous assent as to establish an agreement that the conveyance which B was to obtain for the benefit of A might be put in such form as to enure exclusively to his own benefit.

*Heard April 12. Decided April 18.*

Appeal in Chancery from Oakland Circuit.

The case was heard below on pleadings and proofs, and a decree passed for complainant, from which the defendant appealed. The nature of the pleadings, and the facts established by the proofs, are sufficiently stated in the opinion.

*A. C. Baldwin,* for complainant, in reference to the construction of the statute abolishing trusts, cited the following cases arising under the New York statute, which is the same as that of Michigan:—*Safford v. Hynds, 39 Barb., 625 ; Lounsbury v. Purdy, 11 Barb., 490 ; 16 Barb., 382 ; Day v. Roth, 18 N. Y., 448 ; White v. Carpenter, 2 Paige, 238 ; Swinburne v. Swinburne, 28 N. Y., 568 ; Siemon v. Schurck, 29 N. Y., 598.*

*Crofoot & Brewer,* for defendant, to the same point, cited: *Norton v. Stone, 8 Paige, 222 ; Brewster v. Power, 10 Paige, 562 ; Jencks v. Alexander, 11 Paige, 619 ; Garfield v. Hatmaker, 15 N. Y., 475 ; Sturtevant v. Sturtevant, 20 N. Y., 39 ; McCartney v. Bostwick, 32 N. Y., 53 ; Gilbert v. Gilbert, 40 N. Y., 159.*

COOLEY, J.

The facts in this case are few and simple, and in regard to the most of them there is no dispute. In the fall of

1854, complainant resided in Bennington, New York, upon a parcel of land which he had purchased of the Holland Land Company, and upon which he was then owing about thirteen hundred dollars, which he was unable to pay. The company were demanding payment, and had sent an officer, whether with legal process or simply as their agent, we are not informed, to remove him from the premises, when one Stillman Goodenough, complainant's brother-in-law, intervened, and succeeded in obtaining two weeks time, in which to make some arrangement if possible. Complainant seems to have been quite discouraged, and put himself entirely into the hands of Goodenough, telling him to go on and make a saving for the family if he could do so. Goodenough did go on as agent for complainant, and succeeded in making an arrangement with one Patchin, then residing in Steuben county, New York, to exchange the interest of complainant in the Bennington land for an eighty-acre lot owned by Patchin in Milford, Oakland county, Michigan. Complainant signed some writing expressing his satisfaction with this arrangement, and it would seem to have been closed up at once, so far as complainant was concerned, but the deed from Patchin was executed at his home and was not sent on until some weeks afterwards. It does not distinctly appear that there was any understanding between complainant and Goodenough, as to who should be named as grantee in the deed from Patchin, but the deed when received named Goodenough as grantee, and complainant does not appear to have expressed any dissatisfaction with it. He, however, took possession of the Milford land, claiming it as his own, and has ever since been in possession under the like claim, and made valuable improvements.

Stillman Goodenough, it appears, conveyed the Milford land to his brother, John R. Goodenough, in 1855, on an understanding, as he claims, that the title should still be

held for complainant, and there have been several subsequent conveyances, until the legal title has become vested in the defendant, who claims to be a grantee in good faith and for value. It is not claimed, however, that defendant or any of the intermediate grantees has or had any greater equities than were possessed by Stillman Goodenough, and as the complainant's continuous possession must be regarded as notice of his actual rights,—*McKee v. Wilcox, 11 Mich., 358,*—we need not consider the merits of any of the alleged subsequent purchases.

The bill in this case avers that Stillman Goodenough took the title to the Milford land in his own name without the consent of complainant, and in fraud of his rights; and its purpose is to compel the defendant to release to the complainant the title which, it is claimed, is held for him under an implied or constructive trust. The defendant insists that the conveyance to Stillman Goodenough was made with the full approval of complainant, and that consequently under our statute he is entitled to no relief.

As the consideration for the conveyance to Stillman Goodenough was furnished by complainant, there can be no doubt that at the common law there would have been a resulting trust in complainant's favor. But our statute provides that—"When a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as the alienee in such conveyance, subject only" to a trust in favor of creditors, when the effect would otherwise be to defraud them.—*Comp. L.,* §§ *2637-8.*

This provision, however, must be understood as applicable only to those cases in which the deed has assumed the form it has by consent of the party furnishing the con-

sideration. It has no application to a case where one has taken a deed in his own name in fraud of the rights of another, nor to a case where, though no fraud was designed, the conveyance has been made to some person other than the purchaser without his consent. The purpose is to preclude parties from asserting equitable interests in land where they must rest upon parol evidence, in opposition to the written instruments of title, which have been made with their consent and approval. If, therefore, it shall appear that complainant assented to the conveyance to Stillman Goodenough, without demanding or receiving any written declaration or other evidence of a trust in his own favor, no such trust can be declared, however clearly it may appear from the parol evidence that the transaction was entered into for his benefit, and that, between the parties, it was understood that the title was to be held in trust for him. If he has trusted himself entirely to the good faith of Goodenough, and suffered an arrangement to rest in parol which the statute declares shall be evidenced by writing only, it will not be in our power to relieve him even if we were disposed so to do.

It has already been seen that there is no direct evidence of any understanding between complainant and Goodenough as to who was to be made the grantee in Patchin's deed, and we must therefore see what legal inferences are deducible from the situation of the parties, or may fairly be drawn from the facts which appear. The following facts, as we have before said, are unquestioned: 1—that in the arrangement Goodenough acted as agent for complainant; 2—that he was entrusted with the whole management of the negotiation with Patchin; and, 3—that it was distinctly understood between him and complainant that the conveyance made by Patchin was to be for the benefit of complainant. Supposing this to be the whole of their

understanding, the duty of Goodenough was plain. It was to have the conveyance made directly to complainant, or, if made to himself for any other person, then to have a trust in favor of complainant distinctly declared in the conveyance, so that it might be legally enforced; and if he failed to have conveyance made in proper form for the protection of complainant's interests, he would have been chargeable with constructive fraud, and a court of equity would have given complainant the proper relief.

We cannot infer, in the absence of evidence to that effect, that complainant understood Goodenough was to take the deed to himself and without expressing therein any trust in favor of complainant. The contrary is the only reasonable inference. When it distinctly appears that the conveyance was to be for his benefit, we must suppose that he expected it to be in such form that the law would protect his enjoyment of the premises under it. We cannot assume that his agent, into whose hands he placed himself, was understood to be empowered to take conveyance in a form, which would defeat the very purpose of the arrangement, or that complainant, without any occasion whatever, so far as the evidence shows, was to trust his interests for an indefinite period, solely to the continued good will, good faith, and sense of honor and justice of the agent who was negotiating for him.

Goodenough testifies that after the arrangement with Patchin was agreed upon, complainant was informed of it, and expressed his satisfaction. But he does not state that complainant was then told to whom the deed was to be made, and we have no reason to infer that the information went any further than that an even exchange was to be made of the Bennington interest for the Milford land; but after the deed was made by Patchin, it was shown to complainant, and he read it and made no objection, and

this is claimed to be very conclusive evidence that it was in accordance with his expectation and desire. Of this evidence it is to be observed, that if complainant had not previously assented, this failure to object to the deed after it had been made, could not operate as a waiver of his rights. If a constructive trust existed in his favor when the deed was first taken, by reason of its being taken in Goodenough's name, without his consent, he was under no such obligation to assert his rights immediately on learning the facts, as to be barred of his equities by failure to do so. An inference of assent may be drawn from his silence, but there is nothing in the case in the nature of an estoppel.

And we think any such inference of assent is not very conclusive. Goodenough had been giving his services to complainant, and though he had taken the deed in his own name, he had evinced no disposition to appropriate the property. He allowed complainant to take possession and appropriate the profits without account. His possession would preclude any *bona fide* purchase by strangers, and if we suppose complainant to be fully aware of his legal rights, we must assume that he knew he had nothing to gain or lose, by demanding or failing to demand, an immediate conveyance. His silence, consequently, after the transaction was completed, does not seem to us such evidence of previous assent as to warrant our finding, that an understanding is proved that the arrangement Goodenough was engaged to make for the benefit of complainant, might be put in such form as to enure exclusively to the benefit of Goodenough himself.

After careful consideration of this record, we are of opinion that the decree was correct, and that it should be affirmed.

The other Justices concurred.