# MARY ANN ADLARD

*v.*

# THOMAS ADLARD.

1. CHANCERY—*effect of sworn answer, where oath is waived in bill.* Where the bill of complaint waives an answer under oath, the answer of the defendant, although under oath, can be regarded only as a pleading in the case, to which the oath adds no force.

2. HUSBAND AND WIFE—*whether property taken in the name of the wife was intended as a provision for her or not.* Where a husband placed all his earnings in the hands of his wife for investment, and she purchased three parcels of real estate, taking the deeds therefor to herself, which recited that the conveyances were made for her sole and separate use, as her separate estate, independent of her husband; and it appeared that the husband had knowledge of such clause in each of the deeds, having examined the papers; that the relations existing between them at the time were of the most cordial nature, and that such provision for the wife at the time it was made was not extravagant or unreasonable: *Held,* in the absence of fraud being shown, that it would be inferred from the facts that the husband intended a settlement of such property upon the wife as a separate and independent estate beyond his control.

3. SAME—*presumption as to settlement or provision for wife must be a reasonable one.* While it is no doubt a natural presumption that a husband placing his money in the hands of his wife, to be invested in her name, intends it as a specific provision for her exclusive benefit, yet such a presumption would be unreasonable where a husband, a day laborer, deposits with his wife his daily, weekly or monthly earnings as he receives them, with a view, as they accumulate, to a permanent investment, leaving such investment to her own judgment, retaining nothing in his own hands, and making no provision for his own future.

4. Where it appeared that the husband, who followed the business of ornamental painter and grainer for a livelihood, from which he realized large profits from his earnings, had made a reasonable provision for his wife of valuable property, and he, being young and inexperienced, placed all of his money in the hands of his wife, not as a gift, but for safe keeping, she being a woman of business capacity, of mature age and of experienced knowledge of the world, and she invested this, with moneys of her own, in the purchase of other real estate, but took the title in her own name, and they were afterwards improved by the means of both, with no expectation at the time that either would claim an exclusive right to it: *Held,* that, in view of the ample settlement already made upon the wife, it would

not be presumed that the husband designed to appropriate his all to her benefit, leaving nothing for himself, but it would be regarded that such last acquired property was purchased for the joint and equal benefit of both parties.

APPEAL from the Circuit Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

Messrs. FULLER & SMITH, for the appellant.

Messrs. ELDRIDGE & TOURTELLOTTE, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, exhibited in the Cook circuit court by Thomas Adlard against Mary Ann Adlard, and is before us on a rehearing.

It appears by the bill of complaint and the proofs in the cause, that these parties were married in 1862, complainant then being about twenty-two years of age, just out of his apprenticeship, and the defendant a widow, of the more mature age of thirty-five or forty. From the time of their marriage up to March, 1868, they lived together as man and wife.

Complainant alleges, at the time of his marriage he was the owner of a frame building situate on leased land in the city of Chicago, worth, at that time, about eight hundred dollars; that defendant was worth only her wearing apparel and a small quantity of furniture. Complainant was an ornamental painter and grainer, and since his marriage had devoted all his time to his art, realizing large profits therefrom, his average daily receipts throughout the year being from fifteen to twenty dollars. These earnings, complainant alleges, he placed in the hands of defendant, she being acquainted with business, and he having none outside of his art, to keep the same, and to invest them, from time to time, in such property as complainant might select and purchase, being greatly controlled therein by the defendant.

There appears to have been six different pieces of real estate—city lots—claimed to have been purchased with the money so placed in the hands of his wife, the deeds for which it is alleged were taken by his wife in her own name, without complainant's knowledge or consent; that his wife informed him, from time to time, when the purchases were made, that the deeds were made to them jointly, and he, supposing such was the proper mode of conveying real estate to a married man, was satisfied, and paid no further attention to the matter, believing that the title to the lots was in himself alone. He alleges, from the time the lots were purchased he commenced to improve them, erecting buildings on those most valuable; improved and repaired the buildings and fences on other lots, and was, at the time of filing the bill, on the property known as No. 15 Fourth Avenue, a large brick house; three two-story frame dwelling houses on other lots on Hubbard street, and three cottages on lots on Paulina street, the value of all of which is alleged to be twenty-five thousand dollars, with a rental value of four thousand two hundred dollars per annum.

The scope and object of the bill is to compel defendant to convey this property to complainant, he alleging he has filed a bill for divorce, and that defendant is making preparations to sell the property and place it beyond complainant's reach, she herself to take her departure for a foreign country with her paramour.

It is charged defendant has collected all the rents, no part of which has she paid over to complainant.

The prayer of the bill is, that the defendant be compelled to unite with complainant, or alone, in a deed of trust to a third party, for complainant's benefit, and be decreed to convey the lots by good and sufficient deeds, so that the title to the same may vest in complainant, and to repay to complainant the money collected by her for rents, and that she be enjoined from selling, leasing, or in any way disposing of the property, or interfering with the same, except under the order

of the court; and that, in the meantime, a receiver be appointed to take possession and charge of the property and collect the rents.

An injunction was allowed by the circuit judge, and affidavits received by the circuit court in support of the averments in the bill.

The defendant appeared and entered a motion to dissolve the injunction, which the court disallowed and required the defendant to plead, at the same time appointing a receiver, as prayed for.

The defendant put in her answer under oath, although the oath was waived by complainant in his bill.

The answer admits the marriage and cohabitation, but denies most of the other material facts charged.

Exceptions were taken to the answer, which were disallowed, and a replication put in and the cause set for hearing. Much testimony was taken, and a decree passed in favor of the complainant, allowing to him one-half of the property. To reverse this decree, the defendant appeals, and assigns various errors.

As the bill of complaint waives an answer under oath, the answer of defendant, although under oath, can be regarded only as a pleading in the cause, to which the oath adds no force. *Moore et ux.* v. *Hunter,* 1 Gilm. 317; *Willenborg,* v. *Murphy,* 36 Ill. 344; *Wallwork* v. *Derby,* 40 ib. 527; *Hopkins* v. *Granger,* 52 ib. 504.

The evidence on some points is conflicting, but from the whole tenor of it, we are satisfied the proceeds of complainant's labor amounted to many thousand dollars, a great part of which he put in possession of defendant, not as a gift, but for safe keeping, she being a woman of business capacity, of mature age, and of experimental knowledge of the world, he himself being young and inexperienced, ignorant of business, and confiding fully in the fidelity and judgment of his wife. He testifies he was under the belief, all the time, that the money so entrusted to his wife was invested for his benefit,

and the titles taken to him, or to him and his wife, he supposing the latter was the proper mode by which to convey land to a married man, and he remained in that belief until about the time of filing this bill.

The questions made upon the record are, do the proofs show that complainant's money paid for the pieces of property and for what parcels? Was the title to them acquired in such a manner by appellant as to raise a trust in which complainant is the only beneficiary? Can a married woman be a trustee for her husband, and can she be called into chancery by him that she may be compelled to perform the trust?

We do not deem it necessary to determine either of these questions, in the view we have taken of the case.

It appears there were six different parcels of real estate purchased, and deeds taken in the name of appellant. They are described in exhibits A, B, C, D, E and F. That described in exhibit A was purchased of Wolf Schaeffer on the 14th of August, 1863, and that in exhibit B on the 13th of October of the same year, through B. W. Thomas, acting for Charles Tobsy, the owner. Those deeds contain these words: "This conveyance is made to said Mary Ann Adlard, wife of said Thomas Adlard, and to her heirs and assigns forever, for her sole and separate use, benefit and behoof, as a separate estate, independent of her husband." The word "forever" is omitted in exhibit B.

It is claimed by appellee that he had, at this time, ability from his earnings, by a laborious prosecution of his art, to make these purchases, and to pay for them, and his money was so applied by appellant.

Taking this for true, what is the reasonable presumption, this clause being inserted in each of these deeds with the knowledge of complainant, who examined the papers?

At the respective dates of the deeds, the relations between these parties were of the most cordial nature, and the inference must be, as expressed in the deeds, that he intended these pieces of property should constitute in appellant a separate

estate, wholly independent of him. In fact, there is no room for inference, and no fraud is proved. That appellant holds these pieces of property in trust for complainant, is wholly inconsistent with the terms of the deed. Such a provision for the wife, at the time it was made, was not extravagant or unreasonable. Prudential considerations might well conspire with marital regard to provide something certain for one complainant had strong inducements to provide for.

There is nothing in the facts, pertaining to these purchases, requiring us to imply a trust, but tend strongly to show a settlement by complainant of this property upon his wife as an independent estate, beyond the control of complainant, and such should have been the decree of the circuit court.

As regards the property described in exhibits C, D, E, and F, the evidence is not entirely satisfactory whose money paid for it. Complainant claims he paid the whole of it, whilst appellant insists she paid for three several parcels, and also for the improvements thereon.

It is difficult to believe, in the face of the evidence on behalf of complainant, on a consideration of the motives which usually prompt conduct, that complainant intended his earnings, which were large, and which he so often deposited with his wife, should be applied by her in making a provision for herself exclusively. When we consider that, in 1863, he had settled upon his wife a very valuable estate, and thereby made ample provision for her, it is difficult, if not impossible, to believe that he designed his all should be appropriated for her benefit exclusively. Men are not so generous, and we are unable to put any such construction upon these transactions.

We fail to find any evidence to sustain the theory of appellant, that these parcels of property were intended as a separate provision for her, leaving himself destitute.

It can not be doubted that complainant had great confidence in the business qualifications and good judgment of his wife, and that she would make a proper use of the means with

which he had entrusted her; that she would appropriate them in a judicious manner, in which, as the results show, he was not mistaken.

It is, no doubt, as argued by appellant's counsel, a natural presumption that a husband, placing his money in the hands of his wife, to be invested in her name, intends it as a specific provision for her exclusive benefit, yet such a presumption would be unreasonable when a husband, a day laborer, deposits with his wife his daily, weekly or monthly earnings as he receives them, with a view, as they accumulate, to a permanent investment, leaving such investment to her own judgment, retaining nothing in his own hands, and making no provision for his own future. In this particular case the presumption would be very unreasonable, keeping in view the fact of the provision before made for her.

The proof established the fact that these parcels of property were paid for and improved by the appropriation of the money of both parties, with no expectation at the time that either party would claim an exclusive right to it.

We are disposed to hold, in regard to these parcels, as the circuit court held, that they were purchased for the joint and equal benefit of both parties; and as to these parcels the decree of the circuit court must be affirmed; but as respects the premises described in exhibits A and B, they must be held and deemed, for the reasons we have given, to be the separate estate of appellant, and in respect to them the decree of the circuit court is reversed.

The cause will be remanded to the circuit court, with directions to enter a decree in conformity with this opinion.

*Decree reversed in part.*