SMITH *v.* SMITH.

1. HUSBAND AND WIFE—ACCOUNTING—PROOFS—SUFFICIENCY.

In a suit by a husband against the wife for an accounting, a showing by plaintiff that he turned practically all of his earnings for a great many years over to defendant with the understanding and expectation that she was to use the same in connection with some of her own earnings to purchase property the title to which was to be taken in their joint names, but that instead, without his knowledge or consent, she took title in herself, *held*, to justify the finding of the court below in favor of plaintiff.

2. SAME—EARNINGS, OF MARRIED WOMEN—STATUTES.

The property having been purchased and paid for before the passage of Act No. 196, Pub. Acts 1911 (3 Comp. Laws 1915, § 11478), providing that married women should be entitled to retain their earnings, the earnings of defendant belonged to plaintiff.

3. SAME—FRAUD—INTENT—CONSTRUCTIVE FRAUD.

Defendant in the purchase of said property was the agent of plaintiff, and her action in taking title in her own name without his knowledge or consent, although without intent to perpetrate a fraud, operated as a constructive fraud.

4. USES AND TRUSTS—STATUTE—EXCEPTIONS.

Defendant wife, having taken the title to property in her own name without the knowledge or consent of the husband, who furnished the consideration, may not invoke the statute of uses and trusts (3 Comp. Laws 1915, § 11571), in a suit for an accounting, since the case clearly falls within the exception provided for in section 11573.

5. HUSBAND AND WIFE—GIFTS—PRESUMPTION—REBUTTAL.

Although there is a presumption that money paid by a husband to the wife is a gift, such presumption is rebuttable.

Appeal from Genesee; Brennan (Fred W.), J. Submitted June 21, 1921. (Docket No. 2.) Decided October 3, 1921.

Bill by William H. Smith against Sarah Smith to enjoin summary proceedings and for an accounting. From a decree for plaintiff, defendant appeals. Affirmed.

*Withey & Freeman* and *D. G. F. Warner,* for plaintiff.

*Herbert W. Smith,* for defendant.

FELLOWS, J.   The testimony in this record in many particulars is irreconcilable.   We shall not attempt to detail it but will content ourselves with a statement of the facts we are satisfied its preponderance establishes.   Plaintiff at the time of the hearing of the case in the court below was 72 years old.   At the age of 21 he married the defendant, then 16 years old.   Neither was possessed of any property at the time of the marriage.   He was an ignorant laboring man and was unable to read, write or figure.   For a number of years they lived at Imlay City in Lapeer county.   Four children were born to them there, one of whom is now deceased.   Work for common laborers was not plentiful at Imlay City, but we are satisfied that plaintiff worked whenever he could obtain employment.   Defendant also worked out when they lived there.   He attempted to obtain a home by buying on a contract but does not seem to have been able to keep up his payments.   Over 20 years ago he came to Flint seeking employment and secured it with the Grand Trunk as a section hand.   In a few weeks he sent for his family.   They moved into a building before that used as a meat-market but which was cleaned up so that it could be used for a residence. The rent was $5 per month.   Later this property was bought for $450 on a contract.   The manner in which the title to this property together with other property later purchased on contract for $85 was taken and who

paid for the property and the improvements furnishes the subject-matter of this litigation.

A house was built on the land first purchased on Saginaw street, a brother-in-law of plaintiff donating considerable of the work. The old remodeled meat-market was moved on the other property on 10th street, and, as we understand the record, another comparatively cheap house was also put on the 10th-street property. None of the houses were expensive, all were cheaply constructed. The phenomenal growth of Flint, however, had so enhanced the value of these properties that at the time of the hearing of the case in the court below they were worth approximately $20,000, largely due to their location.

In the land contracts and in the deeds defendant's name alone appeared. Plaintiff testifies that he always supposed until the difficulties arose between them which caused their separation that the papers were drawn up to him and his wife. We are satisfied he is telling the truth. Defendant admits that the purchases were made in her name and that she did not say anything to her husband about it. We are also satisfied that after the parties moved to Flint plaintiff turned over to defendant his wages, and that he worked practically all of the time. He spent little on himself. The only clothes he bought were work clothes. He drank some, but not excessively. He earned from $1.35 to $1.50 per day when at work for the Grand Trunk and at other times he received higher pay. Both were frugal and industrious and defendant worked out some, took in boarders and finally the property and the improvements were all paid for. Plaintiff received $100 from a man in Imlay City upon surrendering a land contract, and $150 from his father's estate. Defendant admitted on cross-examination that $235 of this was turned over to her, although she attempted to modify this in other

parts of her testimony; she also admits that as a general thing he gave her his wages. Her testimony shows her to be the dominating one of the family. During all the years after they moved to Flint plaintiff turned over to her practically all the money he received from all sources in the honest belief that he was paying for property the title to which was in him and his wife, in the honest belief that it belonged to them both.

We need not determine who was to blame for the separation. It will suffice to say that their marital relations terminated one day when defendant struck plaintiff with a washboard and he left and she filed a bill for divorce. He then learned for the first time that the accumulations of a lifetime were all in the name of the defendant. Later he took up his abode in one of the houses on 10th street. Upon defendant's attempting to oust him by proceedings before a circuit court commissioner this bill was filed in which he seeks to have his rights in the real estate determined and to restrain defendant from disposing of the property.

To this action defendant interposes a defense upon the facts and also a legal defense. She insists as matter of fact that she paid for all these properties and for all the improvements. As we have already indicated we are persuaded that the plaintiff's claim on the facts has the support of the great preponderance of the proof. The trial judge who saw and heard the witnesses so found and we are convinced he was right. There is no doubt defendant is a hard working woman. She worked out and took in boarders, but that her earnings alone or in any considerable amount paid for these properties we very much doubt. But beyond that the properties were paid for and improved before Act No. 196, Pub. Acts 1911 (3 Comp. Laws 1915, § 11478), took effect, and when the wife's

earnings belonged to the husband.   *In re Mayer's Estate*, 210 Mich. 188.

This brings us to the legal defense.   Counsel for defendant invokes the statute of uses and trusts, and insists that it precludes the plaintiff's right to relief. Section 11571, 3 Comp. Laws 1915, provides:

"SECTION 7. When a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section."

But this section does not stand alone.   The 9th section of the statute of uses and trusts, being section 11573, 3 Comp. Laws 1915, provides (we italicize the important words) :

"SECTION 9. The preceding seventh section shall not extend to cases where the alienee in the conveyance shall have taken the same as an absolute conveyance in his own name, *without the knowledge or consent of the person paying the consideration,* or when such alienee, in violation of some trust, shall have purchased the lands so conveyed, with moneys belonging to another person."

We have already found that the plaintiff paid the consideration and that defendant took title in her own name without his knowledge or consent.   In the early case of *Fisher* v. *Fobes*, 22 Mich. 454, this court considered both of these sections.   Mr. Justice COOLEY, who wrote for the court, after quoting from section 7, said:

"This provision, however, must be understood as applicable only to those cases in which the deed has assumed the form it has by consent of the party furnishing the consideration.   It has no application to a case where one has taken a deed in his own name

in fraud of the rights of another, nor to a case where, though no fraud was designed, the conveyance has been made to some person other than the purchaser without his consent. The purpose is to preclude parties from asserting equitable interests in land where they must rest upon parol evidence, in opposition to the written instruments of title, which have been made with their consent and approval. If, therefore, it shall appear that complainant assented to the conveyance to Stillman Goodenough, without demanding or receiving any written declaration or other evidence of a trust in his own favor, no such trust can be declared, however clearly it may appear from the parol evidence that the transaction was entered into for his benefit, and that, between the parties, it was understood that the title was to be held in trust for him. If he has trusted himself entirely to the good faith of Goodenough, and suffered an arrangement to rest in parol which the statute declares shall be evidenced by writing only, it will not be in our power to relieve him even if we were disposed so to do.

"It has already been seen that there is no direct evidence of any understanding between complainant and Goodenough as to who was to be made the grantee in Patchin's deed, and we must therefore see what legal inferences are deducible from the situation of the parties, or may fairly be drawn from the facts which appear. The following facts, as we have before said are unquestioned: 1, That in the arrangement Goodenough acted as agent for complainant; 2, that he was intrusted with the whole management of the negotiation with Patchin; and 3, that it was distinctly understood between him and complainant that the conveyance made by Patchin was to be for the benefit of complainant. Supposing this to be the whole of their understanding, the duty of Goodenough was plain. It was to have the conveyance made directly to complainant, or, if made to himself for any other person, then to have a trust in favor of complainant distinctly declared in the conveyance, so that it might be legally enforced; and if he failed to have conveyance made in proper form for the protection of complainant's interests, he would have been chargeable

215—Mich.—36.

with constructive fraud, and a court of equity would have given complainant the proper relief."

So in the instant case defendant was the agent of plaintiff and was intrusted with the business, and the purchase was made for the benefit of both, for a home for them both. We need not find that defendant actually intended to perpetrate a fraud on her husband. What she did operated as a constructive fraud. In the case of *Uhl* v. *Weiden*, 122 Mich. 638, one Herrington, a real estate dealer, negotiated the purchase of the property for Mr. Uhl. In order to show that he was doing a large business he took title in his own name without Mr. Uhl's knowledge or consent. He intended to and did deed to Uhl. But before Mr. Uhl's deed was recorded Herrington's creditors levied on the premises. This court there said, speaking through Mr. Justice HOOKER:

"By taking title to himself, Herrington perpetrated a legal fraud upon Uhl, though it appears to have been by no design to wrong or injure him."

See, also, *McCreary* v. *McCreary*, 90 Mich. 478; *Connolly* v. *Keating*, 102 Mich. 1; *Linsley* v. *Sinclair*, 24 Mich. 380; *Judd* v. *Judd*, 192 Mich. 198. The plaintiff having paid the consideration and the title having been taken in the name of the defendant alone without his knowledge or consent the case falls within the exception provided for in section 9 of the statute of uses and trusts.

Counsel for defendant insists that this case is controlled by *McNamara* v. *Langguth*, 198 Mich. 776, and *Fleming* v. *Dalton*, 201 Mich. 294. In both of these cases we held that plaintiffs had not made out a case. In both cases the wives were deceased and the husbands could not testify. In the instant case the parties were both alive, both testified, both gave their version of the transaction and as already indicated

plaintiff made out his case by a preponderance of the proofs.

*Waterman* v. *Seeley*, 28 Mich. 77, is also relied upon by counsel. That case holds that where money is paid to a wife or child there is a presumption that it is a gift or an advancement. No doubt there is such a presumption but it is a rebuttable one. An interesting case is that of *Adlard* v. *Adlard*, 65 Ill. 212. In that case the plaintiff, a laboring man, earned large wages as an ornamental painter and grainer. He turned over his wages to his wife who purchased six pieces of property, taking title in her own name. The court found that as to two of the pieces of property plaintiff knew and consented that title be taken in her name and refused relief as to these two pieces but granted relief as to the balance. Speaking of the presumption noted in the *Waterman Case,* the court said:

"It is, no doubt, as argued by appellant's counsel, a natural presumption that a husband, placing his money in the hands of his wife, to be invested in her name, intends it as a specific provision for her exclusive benefit, yet such a presumption would be unreasonable when a husband, a day laborer, deposits with his wife his daily, weekly or monthly earnings as he receives them, with a view, as they accumulate, to a permanent investment, leaving such investment to her own judgment, retaining nothing in his own hands, and making no provision for his own future."

From what has been said it follows that the decree of the court below which recognized the rights of both parties in this property should be affirmed. Plaintiff will recover costs of this court.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.