NURRIE *v.* FITZGERALD.

1. HUSBAND AND WIFE—EXECUTORS AND ADMINISTRATORS—OWNER-SHIP OF BANK DEPOSIT—EVIDENCE.
In a suit by a husband against the executor of his wife's estate, evidence *held*, to justify the conclusion of the court below that money on deposit in a bank standing in the wife's name belonged to plaintiff.

2. SAME—PAYMENT TO WIFE PRESUMED A GIFT.
Where money is paid to a wife or child, there is a presumption that it is a gift or an advancement, but this is a rebuttable presumption.

3. SAME—BANKS AND BANKING—RIGHT TO MONEY DEPOSITED IN NAME OF ANOTHER.
That money belonging to plaintiff was deposited in a bank in his wife's name, would not defeat his right to the possession of it.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted January 26, 1923. (Docket No. 68.) Decided March 22, 1923.

Bill by Charles Nurrie against William L. Fitzgerald, executor of the last will of Mary Ann Nurrie, deceased, to determine the ownership of a fund deposited in a bank. From a decree for plaintiff, defendant appeals. Affirmed.

*R. G. Goembel,* for plaintiff.

*Jackson, Fitzgerald & Dalm,* for defendant.

FELLOWS, J. This case involves the ownership of $5,655 on deposit in the First National Bank of Kalamazoo, standing in the name of Mrs. Charles Nurrie at the date of her death. Plaintiff, Charles Nurrie,

was the husband of Mary Ann Nurrie; William L. Fitzgerald is the executor of her will executed shortly before her death in which she bequeathed $2,000 to her mother, $500 to her sister, and the balance to her husband. The bank was made defendant but did not participate in the hearing of the case and is not interested in the outcome. Plaintiff was a subcontractor under the Marble-Palmer Company, and in 1921 was engaged in the performance of his contract in laying rails for the Michigan Central railroad. He had about 65 men in his employ. During the fall of that year his contract took him to Decatur, Galien, Niles and Concord on the Air Line branch. He would only be at his home in Kalamazoo over Sundays. Plaintiff's employees received their regular pay by checks of the Marble-Palmer Company sent direct to them and plaintiff paid them a bonus of five and ten cents an hour in cash. Plaintiff was paid by checks as his contract proceeded. The account in question was opened September 6, 1921. We are satisfied beyond doubt that the initial deposit and each succeeding one was made up entirely by payments made by the Marble-Palmer Company to plaintiff on his contract. While the teller of the bank is not as positive in his recollection as some witnesses are, the trial judge, who heard him testify and saw him on the witness stand, placed credence in his testimony and, taking it and other disinterested testimony in connection with the circumstances of the case, concluded the fund belonged to plaintiff.

It not infrequently happens that the circumstances which develop in a case and which are established beyond cavil are more persuasive than the testimony falling from the lips of interested witnesses. Such is the instant case. The circumstances all point one way. They are aided by disinterested testimony and drive one reading this record to the conclusion reached

by the circuit judge that the fund in the bank was the money of plaintiff and not the money of deceased at the time of her death; that it was the money of the plaintiff when deposited and so remained. We shall not attempt to detail all the circumstances, but some should be noted. Plaintiff, although doing a large business, had no bank account in his own name. Unless this money was his money he had nothing to show for his season's work, for the performance of his contract on the railroad, no money with which to conduct his operations. Defendant's counsel insist that both had money, but the facts are that the money which plaintiff had was all paid by the Marble-Palmer Company after his wife's death. When she died, so far as this record discloses, he was absolutely without present funds. Mrs. Nurrie had another account in the same bank, a checking account; the amount deposited in this account would indicate that it was for her personal needs and household expenses. Plaintiff was not in Kalamazoo during banking hours; he frequently needed currency to pay the bonus and the operating expenses of the camp; on occasions when plaintiff would be coming home in the evening or when Mrs. Nurrie would be going out to the camp, she would have currency in considerable sums in her pocketbook or at the house. On one occasion she sent plaintiff $1,000 in currency by one of the men. The money was given the man at the bank. Mrs. Nurrie had no separate income and was not possessed of any property when she married plaintiff. Every dollar of the sum here involved was money paid by the Marble-Palmer Company to plaintiff for the performance of his contract. All of these circumstances sustain the somewhat indefinite recollection of the bank teller to the effect that when the account was opened Mrs. Nurrie explained that her husband would · not be in town during banking hours, and that the

account should be so carried as to permit her to draw the checks for the convenience of the business. Manifestly this money was the money of the plaintiff unless he gave it to his wife.

Where money is paid to a wife or child there is a presumption that it is a gift or an advancement (*Waterman* v. *Seeley,* 28 Mich. 76); but this is a rebuttable presumption. *Smith* v. *Smith,* 215 Mich. 556. In the last cited case we quoted with approval from the case of *Adlard* v. *Adlard,* 65 Ill. 212, the following language:

"It is, no doubt, as argued by appellant's counsel, a natural presumption that a husband, placing his money in the hands of his wife, to be invested in her name, intends it as a specific provision for her exclusive benefit, yet such a presumption would be unreasonable when a husband, a day laborer, deposits with his wife his daily, weekly, or monthly earnings as he receives them, with a view, as they accumulate, to a permanent investment, leaving such investment to her own judgment, retaining nothing in his own hands, and making no provision for his own future."

This language is particularly applicable to the facts of the instant case. If plaintiff had given this money to his wife he had practically stripped himself of his business capital and the means of going ahead with his contract. The circumstances and the testimony above referred to rebut any presumption which the law created. We need not review at length the testimony introduced by defendant. No shadow of doubt can be cast upon that given by the executor. The mother and sister were called as witnesses; both gave testimony tending to show admissions of plaintiff that the money belonged to his wife; both testified that they came to visit deceased in December and remained until after her death, that on the evening of their arrival she showed the bank book of the account in question, said it was hers, and that plaintiff acquiesced

in such statement, and that she said: "I have got more this time than what I had last time when you came." Their last visit was the preceding May. Neither the account in question nor the checking account was opened until fall. She had no bank account in May, and, so far as the record discloses, no cash on hand at the time of their former visit. This is possibly but a slight circumstance but it challenges scrutiny of their testimony. Without further discussion of the testimony it may be said that we are clearly of the opinion, as was the trial judge who heard and saw the witnesses, that the money here involved is the money of the plaintiff. The money being that of the plaintiff, his right to it was not defeated by the fact that it was deposited in the name of another. *Davis* v. *Savings Bank*, 53 Mich. 163; *Hamburger* v. *Bank of Detroit*, 218 Mich. 173.

The decree will be affirmed, with costs.

WIEST, C. J., and McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.