## In re BARNES' ESTATE.
## BAKER et al. v. APPLE et al.

No. 29031. Oct. 10, 1939.

Rehearing Denied Nov. 7, 1939.

Chas. R. Alexander, of Woodward, for plaintiffs in error.

L. H. Clark, of Arnett, for defendants in error.

DAVISON, J. This is an appeal from the final decree of distribution entered in the estate of J. W. Barnes, deceased, by the district court of Ellis county, Okla., after a trial de novo had upon appeal from the county court of said county.

The appellees are the children of Jeptha A. Barnes, a deceased son of the testator, while the appellants are the testator's other children and the administrator of the estate of the deceased's widow.

According to the terms of the testator's will, one-third of his property, both personal and real (exclusive of that which seems to have been the homestead), was left to the widow, Sarah M. Barnes. The remaining two-thirds thereof was to be divided in equal shares between his children, and it was further provided in the will that the heirs of the deceased son, J. A. or Jeptha A. Barnes, should receive the same share thereof that he would have received had he been living. This was the general plan of distribution followed in the final decree entered by the district court, but in addition to the distributive shares therein granted the children of Jeptha Barnes, the decree purported to give them a lien in the amount of $400 upon the distributive shares of the other heirs of the testators. It is this portion of the decree that the appellants allege is erroneous.

The final decree, itself, does not disclose the reason for the lien therein created, but evidently the basis for said lien was the result of a distribution of certain funds of the estate that occurred many years previously and soon after the administration proceedings had been commenced in the county court. According to the evidence introduced before the district court, each of the children or their estates should have participated in the distribution to the extent of $400. The testimony shows that some of the children received their $400 in cash, while others received merely credits in that amount upon debts which they had owed their father at the time of his death, pursuant to a provision of his will directing that the amounts that any of his children might owe him at the time of his death should be deducted from their individual

shares in the estate. Presumably, the lien which is provided for in the decree before us was created by the district court with the object of recompensing the children of Jeptha Barnes for the $400 payment which they failed to receive from the distribution just described.

The appellants do not deny that the appellees did not receive their share of such funds, but they contend that said grandchildren were not entitled to any cash from that distribution. They say that by reason of the above-mentioned provision of the testator's will dealing with any debts that his children might owe him at the time of his death, the appellees were merely entitled to a $400 credit upon a debt in the same amount, which they contend that the evidence shows to have existed from Jeptha to his father at the time of the latter's death. Obviously, if the appellants' contention is correct, the amount which the appellees were due and never received, from the distribution of the funds in the estate, would be balanced, offset, or canceled by the alleged debt from Jeptha to his father, and therefore no valid basis would remain for a lien such as the district court decreed. The appellees assert, however, that the evidence is insufficient to prove that such a debt existed, and that, consequently, the creation of the lien is not contrary to the evidence.

The sole question thus resolved is whether the decree appealed from is contrary to the evidence concerning the existence of the debt in the sum of $400 alleged to have been due from Jeptha to his father at the time of the latter's death. The asserted debt is said to have arisen out of a transaction whereby the testator relinquished in favor of Jeptha a so-called "preference right lease" that he had purchased through the Commissioners of the Land Office upon land belonging to the state. While it appears from the record to be an undisputed fact that the testator owned such a lease in the year 1903, and that the same was transferred in 1909 to Jeptha, yet we consider the evidence introduced remarkably weak and insufficient to support a conclusion that by reason of said transfer Jeptha was indebted to his father in the asserted sum at the time of the latter's death in 1922. No copy of the lease nor other direct written or documentary evidence of any indebtedness created by the transaction or the consideration therefor, if any, was introduced at the trial. We are asked to base a necessary finding that said transaction created a debt and that the same was still due and unpaid when the testator died, upon evidence which we regard as wholly insufficient to overcome the presumptions supporting the judgment of the trial court. A conclusion that the transfer of the lease created an indebtedness from Jeptha to his father would have to be founded entirely upon evidence consisting of the opinions of third parties and circumstances which we regard as having a questionable status if not being altogether worthless as proof of the main question of fact at issue. The witnesses who did not seem to have based their opinions that the transaction created an indebtedness, purely upon assumption, revealed that they were based upon conversations between the father and son or statements of the father that they claimed to have heard. Of the latter class were Orville Barnes, Lola Homokey, and W. C. Barnes. With reference to the matter under consideration, the first of these witnesses testified as follows:

"Q. You wouldn't here, under oath, tell the court that you have any positive knowledge that Jeptha owed the estate anything at his death? A. No, only I have heard that from my father. Q. When? A. Before he died. Q. How long before he died? A. Well, not long before he died. I was there when he was making up some legal papers. Q. You do not know that Jeptha owed the estate? A. Well, I do from some arguments about it. * * * Q. Who was arguing? A. Well, I have heard my father and my oldest brother arguing on that question. Q. How much did your oldest brother say? A. Well, not much he said he didn't. Q. Who was your oldest brother? A. Jeptha. Q. Jeptha said he didn't and your father said he did? A. Yes."

Upon the same matter, Lola Homokey testified as follows:

"Q. And you say Jeptha become indebted to Mr. J. W. Barnes, his father, by reason of fact that his father gave it to Jeptha 160 acres of that school land? A. Yes. Q. What did Jeptha and Mr. Barnes say in that, in your presence? A. They were just talking about it."

The following excerpt from the record contains the testimony of W. C. Barnes with reference to the question:

"Q. During his lifetime and the lifetime of your father, I will ask you to state whether or not Jeptha become indebted to your father, of your own knowledge? A. Yes, sir, at one time, he did. Q. Do you know how much the indebtedness was? A. $400. Q. You may tell the court what was the consideration your father gave Jeptha that caused Jeptha to be indebted to your father for $400? A. He sold Jeptha a quarter of land. Q. Was that school land? A. Yes, sir, it was school land. * * * Q. What can you say as to whether or not the

$400 was ever paid? A. Well, at one time they kinda had a dispute about it and at my father's death, if any of us boys owed him anything he would put it down on a piece of paper pinned to the will. Q. Do you know whether this $400 was pinned to the will? A. Yes, sir, it was at one time. Q. Have you seen it pinned to the will? A. Yes. Q. How did it read? A. Well, as I remember it just said some of us children that owed him anything, if we owed anything he put it down on a piece of paper pinned to the will. * * * Q. Do you know whether Jeptha owed him $400 or not? A. Well, in my own mind, I do. Q. Did you hear Jeptha and your father negotiate by which Jeptha owed him $400? A. Yes, sir, I did. Q. What was said? A. Well, Jeptha thought Father gave him that $400 and Pa said that wasn't right and there is where they had the dispute. * * * Q. What did Mr. Barnes claim Jeptha owed him $400 for? A. For this quarter of land. Q. And Jeptha claimed he did not owe him $400, was that the conversation? A. Well, yes. Q. You say that at that time your father had a list of the children and the amount of debts that they,—that he claimed they owed? * * * Q. You saw the list your father made and you say that list that your father made was attached to the will? A. It was pinned on top of the will. Q. And it was still pinned on the will after he died, was it? A. No, I didn't see the will afterwards."

An examination of the above testimony readily reveals that before the testator's death there was a dispute between himself and his son, Jeptha, over an amount of money. Such evidence cannot be accepted as proof of an indebtedness. While it may perhaps be presumed in some cases of the transfer of property between individuals that there was a pecuniary consideration for the same, yet this presumption does not necessarily exist in the case of a transfer of property from a father to one of his children. Moreover, there are some authorities which hold that not only does such a presumption not exist, but that the contrary one, to the effect that the property is a gift, should be indulged. See Stiff's Ex'r et al. v. Stiff (Ky.) 290 S. E. 718; Holland v. Bonner (Ark.) 218 S. W. 665, 26 A. L. R. 1101: Smith v. Smith (Mich.) 184 N. W. 501; and annotation at 26 A. L. R. 1106, 1107.

In addition to the foregoing testimony, the appellants rely upon a notation which was introduced as their Exhibit "A" at the trial. It purports to be a statement of certain debts due the J. W. Barnes estate together with certain credits given thereon. John W. Burrow testified that he was the former attorney for the testator and was also the author of the statement. Exhibit "A" purports to show an item of $400 as a debt owing the estate from Jeptha Barnes as well as a credit of the same amount, supposedly entered on May 8, 1922. Mr. Burrow's testimony is to the effect that the first distribution of cash in the testator's estate "was made according to the indication of this statement. * * *" It will thus be seen that though such evidence may tend to refute other testimony given by Orville Barnes to the effect that Jeptha Barnes or his estate did not participate in the first distribution of cash left by his father, it is, of course, insufficient to establish the fact that he ever voluntarily or by operation of law incurred such an indebtedness.

Finding the evidence relied upon insufficient to establish that any indebtedness from Jeptha Barnes to the testator existed at the time of the latter's death, we see nothing to bring the legacy from his father to his heirs within the operation of the provision of said father's will concerning debts due him from his children. Therefore, the final decree of distribution entered by the trial court herein will not be disturbed, and its judgment is hereby affirmed.

BAYLESS, C. J., and RILEY, OSBORN, and GIBSON, JJ., concur.