72 Mich. App. 202 (1976)
249 N.W.2d 356
In re DONCEA ESTATE
PLANS
v.
DITTRICH
Docket Nos. 25013, 25014.
Michigan Court of Appeals.
Decided November 9, 1976.
*204 Anthony, Hearsch & Biernat, for Marie Plans, George Doncea and Nicholas Doncea, Jr.
George Silitch, for Anna Hannah, Peter Doncea and John Doncea.
Dinan, Schenden & Schaden, P.C., for Sadie Dittrich and Arthur R. Reibel, co-executors of the estate of Elizabeth Doncea, deceased.
Burke, Sawyer & Chapman, P.C., for Sadie Dittrich.
Larry Dropiewski, for Park Lane Court, Inc., and Theodore Doncea.
Before: R.M. MAHER, P.J., and M.J. KELLY and D.C. RILEY, JJ.
D.C. RILEY, J.
Like many others before and after her, Elizabeth Doncea came to this country hoping to escape the poverty of her homeland. With her family's assistance, she succeeded unqualifiedly.
After her death, six of her nine children brought two separate civil actions attacking the provisions of her will and challenging the previously undisclosed incorporation of the family business (a trailer park) and the transfer of the trailer park realty to Theodore Doncea, another of the decedent's sons. The two suits were consolidated for trial owing to the similarity of factual and legal issues involved. Defendants are the estate of Elizabeth Doncea, Theodore Doncea, Sadie Doncea Dittrich and Park Lane Court, Inc., the corporation formed by Elizabeth, Sadie and Theodore.
*205 The record on appeal consists of 1900 pages of trial transcript plus a number of lengthy depositions. Because of the complexity of the fact situation and our disposition of the case, we do not believe that a lengthy exposition of facts is required. Suffice it to say that these cases involve the disposition of the assets held by Elizabeth Doncea at the time of her death. Her old-world ways and covert maneuvers resulted in difficulties visited on her children which the court below diligently attempted to rectify.
After a four week trial, the lower court sitting as chancellor in equity found, inter alia, that the funds used to buy the land on which the trailer park now stands were obtained by Elizabeth Doncea in settlement of a tort claim held by her then minor son, Peter; that without Peter's knowledge or consent title to this land was taken in the names of Elizabeth and Nicholas Doncea, Sr.; that a resulting trust in Peter's favor would therefore be impressed upon the trailer park; that Peter's knowing acceptance of his siblings' help in developing the park caused the court to impose a constructive trust in favor of the Doncea children; that Theodore Doncea, due to his management of the park after its establishment, was entitled to a 25 percent interest in the park while the other seven children would share equally in the remainder; that the income from the park after Mrs. Doncea's death would be added to certain assets each child held with their mother at her death so as to equalize the children's holdings; and any excess post-death income from the park would be divided 25 percent to Theodore and 75 percent to the other seven children.
Defendants, Theodore Doncea and Park Lane Court, Inc., argue that the lower court erred reversibly *206 by imposing a resulting trust in Peter's favor. In support of their argument, defendants cite MCLA 555.7; MSA 26.57 which provides that no use or trust will result where consideration is paid by one person and title is taken in the name of another.
We are not persuaded. Defendants appear to have overlooked MCLA 555.9; MSA 26.59 which specifically exempts from the scope of MCLA 555.7; MSA 26.57 those cases in which the person taking title in his own name does so without the knowledge or consent of the person providing the consideration. Ransom v Ransom, 31 Mich 301 (1875), Connolly v Keating, 102 Mich 1; 60 NW 289 (1894), Smith v Smith, 215 Mich 556; 184 NW 501 (1921).
Our de novo review is in accord with the finding below that Peter Doncea could reasonably have believed that he alone owned the property because he " * * * was constantly so advised by his mother * * * ". Thus, the present case falls squarely within the exemptive language of MCLA 555.9; MSA 26.59, since Elizabeth Doncea took title in her own and her spouse's names without the knowledge of her son Peter who provided the purchase money.
Technically, however, it was improper for the trial judge to impress a resulting trust on Peter's behalf. Rather, the appropriate remedy would be the imposition of a constructive trust:
"where, although [the grantee] is authorized to use another's money in purchasing the land, he is not authorized to take title in his own name but does so, a constructive trust rather than a resulting trust arises." (Footnote omitted.) 5 Scott on Trusts (3d ed), § 440.2, p 3318. *207 See also, 2 Restatement Trusts, 2d, § 440, Comment i, p 396, Coeling v Moes, 23 Mich App 83; 178 NW2d 136 (1970), 1973 Annual Survey of Michigan Law: Trusts and Succession, 20 Wayne L Rev 715, 722-723 (1974).
In addition, we believe the lower court's two-tiered analysis of the flow of fiduciary obligations (i.e., mother to Peter; Peter to siblings) misinterprets Peter's role. As suggested above, Peter became a beneficiary of a constructive trust under MCLA 555.9; MSA 26.59. Once he deliberately accepted the help of his brothers and sisters in developing the park he acted willingly to enlarge the class of beneficiaries under the original constructive trust. Indeed, on direct examination Peter readily acknowledged his siblings' right to share equally in the park.
Such an analysis of Peter's role redirects the focus to Elizabeth Doncea who was in a fiduciary relationship with all of her children. The evidence at trial clearly established a compact between Elizabeth and her children. Under this agreement she promised her offspring that if they would tender to her their paychecks while they remained unmarried, and perform services in furtherance of the family enterprise both before and after marriage, each child would share equally in the business after the death of the last surviving parent.
In attempting to dispose of the trailer park in a manner contrary to this agreement, Elizabeth Doncea violated her duty of loyalty and thus became a constructive trustee by operation of law. Georges v Ballard, 20 Mich App 554; 174 NW2d 311 (1969), Chapman v Chapman, 31 Mich App 576; 188 NW2d 21 (1971). As such, Mrs. Doncea was powerless to dispose of the trailer court property by will or by deed. She was similarly incapable *208 of giving a 40 percent stock interest in Park Lane Court, Inc., to Theodore and a 10 percent interest to Sadie. Consequently, all of the Park Lane Court stock must be included in the constructive trust res. Georges, supra; Chapman, supra.
Cross-appellants, Marie Plans, George Doncea and Nicholas Doncea, Jr., argue that the trial judge contradicted his own factual findings in awarding a 25 percent share of the trailer park to Theodore Doncea. We agree.
The court below justified the larger recovery because Theodore "stayed and worked at the trailer park for considerable time after it was developed". Earlier in the opinion, however, the trial judge acknowledged that Theodore's
"contribution of money to the development was considerably less than some of the other children's since he did not have a job outside of the family for a considerable period of time when the trailer park was being developed. Also, he received substantial payments for the services he rendered to the trailer park after it became established."
Thus, the trial judge erred in failing to give appropriate recognition to his own factual findings. The distribution of the property should depend on the tenor of the agreement. See Summers v Hoffman, 341 Mich 686; 69 NW2d 198 (1955). Since the children complied fully, the agreement should be enforced according to its terms.
Accordingly, except for Stephen Doncea who expressly disclaimed any interest in the trailer park, we believe that each of the Doncea children should receive a 1/8th interest in the trailer park. In addition, after applying the equalization formula suggested by the lower court in its opinion any excess trailer park income remaining should *209 be divided equally among the eight Doncea children.
Several of the other assignments of error involve challenges to the trial judge's findings of fact. After careful de novo review of the record, giving due weight to the superior position of the trial judge to assess the credibility of the witnesses, we are not convinced that we would have reached a different result had we occupied the position of the trial court. Opal Lake Association v Michaywe Limited Partnership, 63 Mich App 161, 165; 234 NW2d 437 (1975), Wells v Wells, 330 Mich 448; 47 NW2d 687 (1951). In fact, we commend the trial judge for the professional manner in which he handled this complex litigation.
We have reviewed all other assignments of error and find no reversible error.
Judgment affirmed in part and reversed in part. Remanded for proceedings consistent with this opinion.
Costs to plaintiffs.
R.M. MAHER, P.J., concurred.
M.J. KELLY, J. (concurring in part, dissenting in part).
There are many allegations of error on all sides in this protracted family squabble. The trial chancellor called for an advisory jury and the advisory jury found, as does the majority, that the children were to share equally in the trailer park in accordance with representations made by the deceased. It is my view of the record however, that the representations alluded to were ambiguous and that the overwhelming weight of the evidence is to the effect that while the deceased intended that all her children would share in the fruits of the family enterprise, it was definitely not her intention that they share equally. She was at the *210 very least an autocrat, and at worst a conspiratorial, manipulating dictator.
At the conclusion of all the proofs, after argument and after the receipt of the advice of the jury, the trial court filed a 17 page opinion detailing his findings of fact. In the interests of economy and brevity, I will cite but a few of those findings:
"The record indicates that the individual contributions varied from $20,000 to over $50,000.
"All the children contributed money and physical labor to the development of the trailer park, some of the children making more substantial contributions than others."
Theodore Doncea was the only child who did not marry. He stayed with his mother in her home until her death and spent "considerably more time on the trailer park than did the other children of the family". His contribution of money was minimal but he did not have an outside job and spent most of his efforts on the trailer park. During the development period the other children married and became less intimately associated with their mother.
I do not agree that the trial judge erred in failing to give appropriate recognition to his own factual findings. There was no agreement here. At one time the deceased indicated that she was going to give four-fifths of this property to Theodore and one-fifth to Sadie. She did in fact give or attempt to give 40% of the stock in the corporation to Theodore and 10% to Sadie. She executed a deed early on, conveying the mobile home park to herself and Theodore, jointly, with right of survivorship. She executed a will leaving 80% of the stock in the corporation formed to run the trailer park to Theodore and 20% to Sadie. Now, whatever else *211 can be said of the expectations of equal participation to which the children testified, the evidence of an "agreement" between them and the mother is controverted by her conduct and the documentary evidence submitted below.
It seems to me that the trial judge had every reason to boil down the controverted and sometimes contrived testimony of the participants toward an equitable solution. It is my judgment that on this record he did so.
There were nine children and one chose to drop out disclaiming any interest in the outcome. Had the nine children each received an equal share, all save Theodore would receive about what they received by the trial judge's equation. The trial judge apparently reasoned that it would be more equitable to give Theodore the unclaimed share than to allow the division opted for by the majority.
I would not have reached any different result than did the trial court and therefore vote to affirm.